408 So.2d 1255 (1982)
STATE of Louisiana,
v.
Steven DEWEY.
No. 81-KA-1325.
Supreme Court of Louisiana.
January 25, 1982.
*1256 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., John Sinquefield, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Myron A. Walker, Jr., of Seale, Smith & Phelps, Baton Rouge, for defendant-appellant.
MARCUS, Justice.[*]
Steven Dewey was charged in the same information with two counts of armed robbery in violation of La.R.S. 14:64. After trial by jury, defendant was found guilty as charged and sentenced to serve nine years at hard labor without benefit of parole, probation or suspension of sentence on each count. The court expressly directed that the sentences be served concurrently with each other as well as with his sentence on a federal conviction for another armed robbery. On appeal, defendant relies on nine assignments of error for reversal of his convictions and sentences.[1]

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in denying his motion to quash grounded on a claim that he was denied his right to a speedy trial as guaranteed by the federal and state constitutions.
On December 7, 1978, defendant confessed to four armed robberies, two of which occurred in Baton Rouge (subjects of the instant prosecution), one in Lafayette (subject of his federal conviction), and one in Alexandria. The confessions were made in the presence of two FBI agents who had arrested defendant on the same day (December 7, 1978) in connection with the Lafayette robbery. On December 27, 1978, the Baton Rouge City Police procured a warrant for defendant's arrest in connection with the instant prosecution for the armed robberies in Baton Rouge. At this time, defendant was being held in the Calcasieu Parish jail located in Lake Charles. On January 25, 1979, defendant pled guilty in federal court to the armed robbery in Lafayette. He was sentenced on February 23, 1979, and removed to federal custody. He was transferred to several federal institutions before reaching his final destination at Englewood, Colorado, in August 1979.
On November 28, 1979, defendant received a certified copy of a detainer letter notifying federal authorities of the Louisiana warrant concerning the instant charges. On February 12, 1980, defendant wrote a letter demanding a speedy trial to the officer whose name appeared on the detainer letter. Another letter requesting a speedy trial was sent to the attorney general of this state on March 19, 1980. On July 16, 1980, defendant was placed in state custody and transferred to the East Baton Rouge Parish prison. Three weeks later, defendant wrote a letter to a federal district judge complaining that he was being held without having been arrested or charged. He was formally arrested on August 4, 1980, and charged by bill of information on August 20, 1980. Trial was set for September 23, 1980, but, on defendant's motion, the case was continued and reassigned for trial on November 11, 1980. On the state's motion, over defendant's objection, the case was again continued and reassigned *1257 for trial on December 8, 1980, at which time trial commenced. Trial was completed on December 9, 1980.
The right to a speedy trial is guaranteed by the sixth amendment to the federal constitution and by article one, section sixteen of our state constitution. The right attaches when an individual becomes an accused whether by formal indictment or bill of information or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The initial inquiry is into the length of delay; if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of delay that will provoke such an inquiry is dependent upon the peculiar circumstances of the case.
In the instant case, defendant was placed in state custody on July 16, 1980, formally arrested on August 4, 1980, and charged by bill of information on August 20, 1980. Prior to this time, he had been arrested and incarcerated only in connection with federal charges lodged against him. Arguably, the earliest date at which defendant's right to a speedy trial attached was July 16, 1980, when he was transferred from federal custody to the East Baton Rouge Parish prison. The length of delay between actual restraint and trialfive monthswas not extraordinary especially considering defendant requested a continuance that resulted in a delay of one and a half months. Even assuming that defendant became an accused earlier than July 16, 1980, the length of delay was two years at most.
Closely related to the length of delay is the reason for the delay. Here, defendant was arrested by federal authorities and detained in Lake Charles until February 1979. At that time, defendant was transferred to various facilities around the country until August 1979 when he was permanently incarcerated in Colorado. Defendant was notified that the state desired to prosecute him for the instant charges within three months after his arrival in Colorado. Eight months after receiving this notice, defendant was transferred to the East Baton Rouge Parish prison. Once in custody of the state, he was formally arrested and charged. A trial date was fixed within two months of his arrival in this state. At defendant's request, however, trial was continued for another month and a half. Over defendant's objection, trial was continued for another month. Much of the delay can be attributed to defendant's incarceration at various federal facilities outside of Louisiana. Moreover, there has been no showing that the state was in bad faith in delaying defendant's prosecution. Under the circumstances, the reasons for the delay are justifiable.
Another factor to be considered is whether defendant asserted his constitutional right to a speedy trial. In the instant case, although defendant wrote several letters to various public officials, he never filed a motion in court asserting his right to a speedy trial. The first letter asserting his right was written thirteen months after the state warrant for his arrest was issued and three months after the detainer letter was sent. By that time, a major portion of the delay had occurred.
Finally, we must consider whether defendant has been prejudiced by the delay. Of course, defendant was prejudiced to some extent by living under a cloud of suspicion and anxiety. However, the prejudice involved was minimal. Defendant was not subjected to oppressive pre-trial incarceration. With the exception of the last five months, defendant was being held by the federal authorities in connection with his federal conviction. Most importantly, *1258 defendant's ability to adequately prepare his defense was not impaired. There is no claim that any of defendant's witnesses died or otherwise became unavailable due to the delay. Accordingly, defendant has not shown the presence of any prejudice.
In sum, we do not consider that defendant was deprived of his constitutional right to a speedy trial. Hence, the trial judge did not err in denying defendant's motion to quash.
Assignment of Error No. 1 is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
Defendant contends the trial judge erred in denying his motion to suppress all confessions and/or inculpatory statements made by him to law enforcement officers and in admitting them in evidence. He argues that they were not freely and voluntarily made after having been advised of his Miranda rights.
At the suppression hearing, William C. Asbury and B. R. Pack, special agents with the FBI, testified that on the morning of December 7, 1978, they met in Lake Charles. They had in their possession a bank surveillance photograph taken during a robbery which occurred at a bank in Lafayette. The photograph depicted an individual who appeared to be Steven Dewey. They proceeded to Dewey's father's place of employment and showed him the bank photograph. He agreed to accompany the agents to his residence where they found defendant asleep. He was awakened, allowed to dress, and taken to the living room where he was read his Miranda rights. Defendant stated that he understood his rights and orally waived them but refused to sign the waiver portion of the printed form. Defendant's father encouraged him to talk to the agents which he did and confessed to the four robberies: the Lafayette robbery, the two Baton Rouge robberies, and a robbery in Alexandria. Defendant was arrested and taken to the FBI office where he signed copies of his confessions. Defendant and his father testified that defendant asked for an attorney at the beginning of the questioning but was ignored. They also stated that defendant was never advised of his rights. Defendant admitted that his father urged him to cooperate with the agents and that he was not mistreated in any way. At the conclusion of the hearing, the trial judge ruled that defendant's statements were voluntarily made after having been advised of his Miranda rights.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A confession need not be the spontaneous act of the accused but may be obtained by means of questions and answers. La.R.S. 15:453. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Castillo, 389 So.2d 1307 (La.1980) cert. denied ___ U.S. ____, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Williams, 386 So.2d 1342 (La.1980).
After a review of the record, we are convinced, as was the trial judge, that the state satisfied its burden of affirmatively proving that the confessions were freely and voluntarily made after defendant had been advised of his Miranda rights. Defendant's contentions that he requested an attorney and was not advised of his rights were in direct conflict with the testimony of agents Asbury and Pack. Accordingly, *1259 we are unable to say that the trial judge erred in denying defendant's motion to suppress and admitting the statements in evidence.
Assignments of Error Nos. 2 and 3 are without merit.

DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
NOTES
[*] Judges Pike Hall, Jr., Charles A. Marvin and Jasper E. Jones of the Court of Appeal, Second Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.
[1] Assignments of Error Nos. 4 through 9 were neither briefed nor argued; therefore, we consider them to have been abandoned. State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).