HALL, Judge.
The defendant Johnny Ray Dunn was charged by bill of information with committing simple burglary in violation of LSA-R.S. 14:62. He was found guilty as charged by a unanimous six-member jury and was sentenced to a term of imprisonment of four years at hard labor. The defendant appealed assigning five errors:
(1) The trial court erred in allowing the state to have the jury removed so that the state could proceed to impeach its own witness and threaten that witness out of the presence of the jury.
(2) The trial court impermissibly participated in the impeachment of the state’s witness by directing questions to the witness on its own and being the first to mention a charge of perjury being brought against the witness.
(3) The trial court erred in admitting into evidence the transcript of a taped statement where the state could not show that the tape cassette which contained multiple recordings had been kept in a place where it could not have been tampered with or altered in the interval between the time the statement was recorded and was subsequently transcribed.
(4) The trial court erred in admitting into evidence the statement allegedly made by the defendant where the state could lay no foundation as to its voluntariness, and where the defendant had refused to sign a waiver of his right to remain silent.
(5) The evidence against the defendant was not sufficient for a conviction where it consisted solely of the testimony of two alleged co-conspirators, especially where the testimony of one of those alleged co-conspirators was impeached by the state in an effort to make the testimony of the two witnesses conform.

Facts:

Two witnesses, Steve Barton and James Hopkins, testified that on the evening of November 17, 1982, after an afternoon of drinking, they drove with the defendant in *1231 the defendant’s ear from Winnfield, Louisiana to Atlanta, Louisiana. The defendant let the two of them out at the Atlanta High School and drove off. Steve Barton testified that he and Hopkins broke into the school and stole a reel-to-reel tape recorder and a blender. Hopkins testified that he did not enter the school, but stayed outside and acted as a lookout while Barton committed the burglary. The defendant drove back to the school and picked them up and the stolen items were placed in the trunk of the car. Both witnesses stated they did not take the stolen articles from the defendant’s trunk when they left him that evening. Both witnesses were vague in their testimony concerning conversations prior to the burglary, but Hopkins testified that all three of them engaged in conversations about breaking into the school.
Investigation of the burglary by the sheriff’s office resulted in the arrest of Barton, Hopkins, and the defendant. The defendant made a statement at the sheriff’s office after being informed of his rights. He admitted driving his car to the school and dropping Barton and Hopkins off there. He stated that he returned to the school and picked his friends up about 45 minutes later. They were carrying two guns, a recorder, and a blender which they loaded into the car. The defendant later sold the stolen items to Jerry Finn for $60.00. The defendant stated that Barton and Hopkins talked about breaking into the school prior to the burglary.

Assignments of Error Nos. 1 and 2:

By these assignments of error the defendant complains of the removal of the jury upon request by the state during the questioning of the witness Hopkins. The defendant argues that the state was allowed to impeach, question, and rehabilitate the witness under a threat of perjury outside of the presence of the jury, thereby preventing the jury from making its own evaluation of the credibility of the witness’s testimony.
The state was questioning Hopkins about conversations between the three occupants of the defendant’s automobile while they were riding around prior to the burglary and was attempting to implicate the defendant in those conversations. The following colloquy took place:
“Q. Who was involved in those conversations?
“A. I would say all of us were.
“Q. Does that include Johnny Ray Dunn?
“A. I don’t really know who all was talking about it.
“Q. Okay. Was there any effort on your behalf to keep Mr. Dunn from knowing about going to Atlanta School?
“A. All I can say is by that time I was pretty well sauced. We had been drinking pretty heavily that afternoon. And I really couldn’t establish who was talking about what. I mean, beyond a doubt in my mind because I don’t know.
“BY MR. ALLEN: Your Honor, could I have the jury removed.”
After the jury was removed the following took place:
“BY MR; ALLEN: Your Honor, at this time Mr. Hopkins has made a previous statement and the statements which he makes at this time are not consistent with the statements he had made before. I would like him instructed as to the necessity of answering truthfully and I would also like to question him in regard to some prior statements.”
(DIRECT EXAMINATION OF JAMES HOPKINS CONTINUES — JURY OUT)
“BY MR. ALLEN:
“Q. Mr. Hopkins, you realize you are under oath, do you not?
“A. Yes sir.
“Q. And ...
“BY MR. SANDERS, III: Your ...
“BY MR. ALLEN: Go ahead, Marty.
“BY MR. SANDERS, III: Your Honor, this is a procedure that runs the State impeaching their own witness and I think that if the State is going to indulge in the practice of impeaching the witness they have called, I have a right to have the jury present and let this witness be impeached in their presence.
*1232 “BY MR. ALLEN: Your Honor, provisions are made for ...
“BY THE COURT: He can’t use that statement in the presence of the jury. Not at this stage of the game, he can’t.
“BY MR. ALLEN: This is Mr. Hopkins statement, Your Honor. This is his own statement.
“BY THE COURT: So ...
“BY MR. SANDERS, III: That is all right with me, Your Honor.
“BY MR. ALLEN: I am just trying to be precautionary. I don’t care if they are in here or not. I want this witness to understand that he is under oath and the consequences of his going against a prior statement. And if it poses a problem Your Honor, I don’t object to the ...
“BY THE COURT: Are you saying you have a statement of ...
“BY MR. ALLEN: This man’s statement.
“BY THE COURT: And the contents of that statement are contrary to his courtroom ...
“BY MR. ALLEN: That is correct.
“BY THE COURT: ... his testimony of the courtroom today?
“BY MR. ALLEN: Yes, sir.
“BY THE COURT: And the implication is that if he continues to testify in the manner that he is, the D.A. would consider a perjury charge?
“BY MR. ALLEN: That is correct, Your Honor.
“BY THE COURT: Do you understand that, Mr. Hopkins?
“BY MR. HOPKINS: Yes, sir.
“BY THE COURT: Very well, Anything else?
“BY MR. ALLEN: That’s all, Your Honor. If they want to bring them back, that is fine with me.
“BY MR. HOPKINS: Would you care to point out the difference in what I have said and what is on the statement?
“BY MR. ALLEN: Shortly.”
After the jury was returned to the courtroom examination of the witness continued as follows:
“Q. Mr. Hopkin, I asked you a moment ago about some conversations that took place in the car. Specifically, about the Atlanta School. Do you recall that?
“A. Yes, sir.
“Q. And I asked you who participated in those conversation. And I will ask you that now, who ... who participated?
“A. I would say we all did.
“Q. During the course of those conversations and as close in time as possible as you can remember to you actually going to the Atlanta School, was there any agreement or was there ... was there any agreement about going to the Atlanta School?
“A. Between who?
“A. Between yourself, Mr. Barton and Mr. Dunn, or if not those 3 then you can tell me who?
“A. There was some agreement.
“Q. Between who?
“A. I would say all of us I guess or we wouldn’t have wound up at the school.
“Q. And the purpose of going to the school was to get some stuff out of it?
“BY MR. SANDERS, III: Objection, Your Honor, he is leading the witness.
“BY MR. ALLEN: I will rephrase it.
“BY THE COURT: Objection sustained.
“Q. What was the purpose of going to the school?
“A. We were going to the school for the purpose of getting something out of it.”
At the time the prosecutor asked that the jury be removed it was apparently the state’s intention to impeach its own witness in accordance with the provisions of LSA-R.S. 15:487 and 488:
§ 487. Impeachment of own witness
“No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.”
*1233 § 488. Meaning of surprise
“ ‘Surprise’ in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.”
LSA-C.Cr.P. Art. 794 gives the court discretion in removing the jury when hearing matters to be decided by the court alone. It was appropriate for the jury to be removed in order for the court to consider whether or not the state had laid the proper foundation for impeachment by showing surprise and to consider the admissibility of evidence of prior contradictory statements. After defense counsel stated that he thought he had a right to have the witness impeached in front of the jury, and after a brief discussion in which prior statements of the witness were mentioned and the witness was made aware of possible perjury charges if he testified contrary to prior statements, the court ordered the jury to be returned to the courtroom. The state did not impeach the witness by use of prior contradictory statements or otherwise, but only continued its questioning along the same lines as prior to the time the jury was removed with substantially the same answers.
We discern no prejudice to the defendant arising out of the discussion which took place out of the presence of the jury. No impeachment occurred either in the presence of the jury or after the jury was removed. No prior inconsistent statement was introduced, nor was there a significant change in the witness’s testimony after the proceedings carried on out of the presence of the jury. The dialogue concerning prior inconsistent statements and perjury, which amounted to little more than an admonition to the witness to tell the truth, were incidental to the court’s proper inquiry outside of the presence of the jury as to whether impeachment should be allowed. The witness was not coerced nor improperly rehabilitated outside of the presence of the jury. See State v. Boyd, 359 So.2d 931 (La.1978) in which a similar procedure was employed in the trial court when the state sought to impeach its own witness.
These assignments of error are without merit.

Assignment of Error No. 3:

The defendant contends in this assignment of error that the trial court erred in admitting into evidence a transcript of a recorded statement made by the defendant. It is argued that the transcript is unreliable because it was prepared by someone other than the officer who took the statement about a week after the statement was taken and the tape was not safeguarded during that period of time.
For the admission of demonstrative evidence it suffices that the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. Sharp, 414 So.2d 752 (La.1982). Here, the state clearly established the accuracy and relevancy of the transcript. The deputy who took the statement after the defendant was arrested and advised of his rights testified that the tape remained in his file from the time it was made until it was transcribed by someone else in his office. He then compared the transcript with the tape and found it to be completely accurate. It is to be noted that the tape was also offered into evidence at the trial.
This assignment of error lacks merit.

Assignment of Error No. 4:

By this assignment of error the defendant contends that the state did not lay a proper foundation for the admission of defendant’s statement in that the state did not prove that the statement was voluntarily given, particularly in view of the fact that the defendant did not sign the waiver of rights form.
According to the testimony of the deputy, the defendant made the statement at the sheriff’s office shortly after he was arrested. The deputy testified that he informed the defendant of his Miranda rights from a standard Miranda sheet. *1234 The deputy said that the defendant indicated that he understood his rights. Although the defendant refused to sign the waiver of rights form, he never indicated that he wanted an attorney, nor was he threatened, coerced, or induced by any promises to make the statement.
In order to introduce a defendant’s statement, the state must make an affirmative showing that it was made freely and voluntarily, and not influenced by fear, intimidation, threats, inducements, or promises. State v. West, 408 So.2d 1302 (La.1982); State v. Dewey, 408 So.2d 1255 (La.1982). If the statement was made in the course of custodial interrogation the defendant must be advised of his Miranda rights before making the statement. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The conclusions of the trial court on the credibility and weight of testimony relating to the voluntariness of a confession are given great weight and are not overturned unless they are not supported by the evidence. State v. Morvant, 384 So.2d 765 (La.1980); State v. Jackson, 381 So.2d 485 (La.1980).
In this case, the state has presented testimony by the arresting officer that the defendant was informed of his Miranda rights and that defendant was not in any way coerced or intimidated or induced to make the statement. The deputy’s testimony establishes that the statement was made voluntarily and it is apparent that a proper foundation for the admissibility of the statement was laid. The defendant confirmed in the statement itself that it was made voluntarily.
This assignment of error is without merit.

Assignment of Error No. 5:

The defendant’s final assignment of error is that the evidence presented by the state is not sufficient to support a conviction. Defendant argues that the only evidence of guilt was the testimony of two confessed accomplices and that the jury should have been instructed to treat such testimony with great caution, but no such instruction was given. It is argued that because of the lack of an instruction to the jury and because the jury was not allowed to view the rehabilitation of one of the witnesses, the conviction should be reversed.
LSA-C.Cr.P. Art. 801 requires that a party assigning as error the failure to give a jury charge must object before the jury retires. Here no special jury instruction was requested and defense counsel made no objection to the charge given. Accordingly, the failure of the trial court to give a special charge on the testimony of accomplices may not be raised on appeal.
The weight to be given any witness’s testimony is an issue to be determined by the finder of fact. State v. Wright, 410 So.2d 1092 (La.1982). Although as a general principle the jury should be instructed that the uncorroborated testimony of a purported accomplice should be viewed with great caution, such an instruction is not necessary in a case where there is corroborating testimony. See State v. May, 339 So.2d 764 (La.1976) and State v. Murray, 375 So.2d 80 (La.1979).
The testimony of the alleged accomplices in this case was corroborated by the introduction of the defendant’s statement. It was further corroborated by the recovery of the stolen items from the person to whom the defendant admitted selling the items. The court’s general charge on the credibility of witnesses was sufficient under the circumstances of this case.
This assignment of error is without merit.
For the reasons assigned, the defendant’s conviction and sentence are affirmed.
Affirmed.