463 So.2d 812 (1985)
STATE of Louisiana, Appellee,
v.
Donald Ray MURPHY, Appellant.
No. 16616-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
Rehearing Denied February 22, 1985.
*815 Kidd & Kidd by Paul Henry Kidd, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, James Norris, Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Judge.
The defendant, Donald Ray Murphy, appeals his conviction of armed robbery, LSA-R.S. 14:64. The defendant was sentenced to serve 20 years at hard labor without benefit of parole, probation, or suspension of sentence. Finding no reversible error by the trial court, we affirm.

Facts
On the morning of October 28, 1980, two black males entered the Stop N Go convenience store on Coleman Avenue in West Monroe, Louisiana. One of the men pointed a Marlin 22 caliber rifle at the store clerk and told everyone in the store to lie down on the floor. At that point, the men removed approximately $100 in cash from the cash register and fled the store in a silver 1976 Chevrolet Malibu Classic.
The defendant and Kenneth Ray McCarter were arrested the next day in Rankin County, Mississippi. Three police officers from West Monroe, Louisiana interviewed the defendant and McCarter in the Rankin County, Mississippi jail. McCarter confessed to participating with the defendant in the armed robbery of the Stop N Go convenience store in West Monroe. According to McCarter, it was defendant Murphy who produced the gun at the robbery.
Defendant Murphy also gave a statement to the West Monroe police officers confessing his participation with McCarter in the armed robbery of the convenience store. However, the defendant claimed that *816 McCarter was the man who pulled the rifle out.
After a jury trial, the defendant and McCarter were found guilty of armed robbery by a vote of 10 to 2. The defendant entered a motion for a new trial which was subsequently denied by the trial court. On appeal, the defendant filed the following assignments of error:
"(1) The trial court erred in compelling defendant to stand trial wearing jail clothing and restrained by shackles.;
"(2) The trial court erred in finding that defendant was stopped, searched, and arrested with probable cause.;
"(3) The trial court erred in admitting evidence consisting of defendant's confession, a blue coat, and a weapon, and in finding said evidence to have been obtained pursuant to a lawful search and arrest.;
"(4) The trial court erred in finding defendant's custodial statement to have been freely and voluntarily given with full awareness of the nature of the charge under investigation.;
"(5) The trial court erred in denying defendant's motion to recuse the trial judge.;
"(6) The trial court erred in denying defendant's motion to quash based upon the denial of speedy trial and the violation of statutory guidelines governing the limitation of prosecution in felony cases.;
"(7) The trial court erred in denying defendant's motion to quash based upon the prejudicial misjoinder of defendant.
"(8) The trial court erred in allowing the admission of an inculpatory statement made by defendant's co-defendant.;
"(9) Defendant was denied the right to counsel free of conflicting of interest due to the earlier appointment of counsel to represent co-defendants with conflicting interest.;
"(10) Defendant was denied basic due process as the result of the prosecutorial nondisclosure of evidence seriously undermining the testimony of a key witness and bearing upon the suppression of items of evidence.; and
"(11) The trial court sentenced defendant to an excessive and disproportionate sentence and further violated defendant's right to minimum due process at the sentencing stage of his criminal trial."

Assignment of Error No. 1
By this assignment, the defendant contends that the trial court erred in requiring the defendant to stand trial wearing clothing issued by the Ouachita Parish Jail and shackles on the defendant's legs. The defendant contends that the clothing and the shackles destroyed his presumption of innocence before the jury.
The Ouachita Parish Jail provided the defendant clothing for the trial. The clothing consisted of a plain blue shirt, blue jeans, and boots. The trial court noted that it could not see anything on the clothing which indicated that it belonged to the Ouachita Parish Jail.
The record also reflects that the defendant was required to wear shackles on his legs during the course of the trial. During voir dire examination, defendant's counsel questioned several jurors concerning the shackles. The attorney asked the prospective jurors if they had noticed the restraints placed on the defendant. Each of the prospective jurors questioned testified that they had not noticed the restraints. Additionally, each prospective juror stated that it did not indicate to them a presumption of the defendant's guilt. After two jurors were questioned concerning the restraints, the trial court asked counsel to approach the bench for a conference. After the conference the court stated to the jurors that it has come to his attention, through the questioning of defense counsel, that one or both of the defendants were in some sort of restraints. The court informed the jurors that this was simply a procedure used by law enforcement officers who are instructed to do this when anyone is taken into custody and that it was not to be considered by the jurors as *817 evidence or that the defendant has a propensity to do anything or that he is guilty of anything by the simple fact that restraints were being used.
The defendant subsequently filed a motion for mistrial based upon the use of restraints on the defendant. The trial court removed the jury and conducted a hearing on the issue.
Defense counsel contended at the hearing that he raised his objection during voir dire when he noticed jurors looking at the restraints. However, the court stated that it did not notice jurors looking at the restraints and did not notice the restraints until defense counsel questioned several jurors concerning the restraints.
Captain Tilman Brown of the Ouachita Parish Sheriff's Office testified that it was now the procedure of the sheriff's office to require defendants to be placed in leg irons at all times. The captain testified that this procedure was necessitated by a number of previous escapes by other defendants. Captain Brown also indicated that he had no specific knowledge that defendant Murphy might try to escape. The trial court denied defendant's motion for mistrial on the basis that any prejudice that may have occurred was eliminated by the trial court's admonition to the jury. Additionally, the court refused to order the removal of the leg restraints because it was the usual procedure of the court, mindful of the fact that there have been previous escapes, to require defendants to wear leg restraints.
An accused may insist that he be brought into the court with the appearance, dignity, and self respect of a free and innocent man. State v. Kinchen, 290 So.2d 860 (La.1974); State v. Broadway, 440 So.2d 828 (La.App.2d Cir.1983). The defendant should not be brought before the court in any manner destructive of the presumption of innocence and of the dignity and impartiality of the judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Broadway, supra.
The United States Supreme Court in Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), held that the state cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothing. When examining this issue on appellate review, the court must focus on whether the defendant has demonstrated that his clothing at trial was readily identifiable as prison attire. State v. Leggett, 363 So.2d 434 (La.1978).
In the present case, the court indicated that the defendant was wearing a plain blue shirt, blue jeans, and boots. The court indicated that there were no markings on the clothing which would indicate to the jury that the clothes were owned by the Ouachita Parish Jail. The defendant made no showing that the clothing could be identified as prison attire. Therefore, the defendant's contention that his clothing denied him his presumption of innocence before the jury is without merit.
In State v. Colvin, 452 So.2d 1214 (La.App.2d Cir.1984), this court found that the standards for judging the propriety of the use of restraints in the courtroom was explained in State v. Wilkerson, supra. The Louisiana Supreme Court in State v. Wilkerson, supra, stated as follows:
"Ordinarily, a defendant before the court should not be shackled or handcuffed or garbed in any manner destructive of the presumption of his innocence and of the dignity and impartiality of the judicial proceedings. Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Clark, 340 So.2d 208 (La.1976); State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976). However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he may attempt to escape. State ex rel. Miller v. Henderson, supra; State v. Daniel, 297 So.2d 417 (La.1974).
"If the handcuffing is objected to at the time of the trial, for a finding of *818 reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State ex rel. Miller v. Henderson, supra."
The trial court did not err in refusing to grant the mistrial. Mistrial is a drastic remedy and should only be granted on a showing of substantial prejudice. The motion was made during the second day of voir dire. Counsel for defendant had made no objection to the shackles prior to the commencement of the trial. The objection was made only after several prospective jurors were questioned about the restraints by defense counsel. Answers of the jurors indicated they were not prejudiced by the presence of the shackles. Comments by the trial court indicate the restraints were not previously noticed until defense counsel's questioning, and that they were unobtrusive. The court admonished the jury that the presumption of innocence was not to be affected by the presence of restraints and that no prejudice was to be attributed to the defendant thereby. At that point in the trial, there was no demonstrated substantial prejudice to the defendant warranting a mistrial.
Alternative to the motion for mistrial, defense counsel moved that the restraints be removed for the balance of the trial. That motion was also denied by the trial court, which noted that it was standard policy of the sheriff's office to bring prisoners to court in leg restraints, absent an order by the judge to the contrary. The judge noted that there had been a recent escape from the courtroom by a prisoner and that the restraints were necessary for courtroom security. The court felt the admonishment to the jury was sufficient to protect the defendant's rights. The district attorney commented during the argument of the motion that the defendant had tried to escape while being arrested by police officers.
We believe the trial court erred in refusing defense counsel's request for removal of the leg restraints during the remainder of the trial, absent a showing of exceptional circumstances or a particular need for this security measure during the trial of this defendant. However, considering the relatively unobtrusive nature of the restraints, the failure of defense counsel to object to their presence until the second day of the trial after they had been observed by the jurors, the clear and complete admonition given to the jury by the trial judge, and the substantial evidence of the guilt of the defendant, including the confessions of the defendant and his codefendant, we find the error to have been without substantial prejudice to the defendant, harmless, and insufficient to warrant reversal of the conviction.
This assignment of error is without merit.

Assignments of Error No. 2 and 3
By these assignments, the defendant contends that the trial court erred in finding that the defendant's arrest was based upon probable cause and urges that the evidence seized as a result of his arrest should have been suppressed as fruits of the poisonous tree.
At approximately 3:45 a.m. on October 29, 1980, Greg Eckland, a Florence, Mississippi police officer, received a radio call from the Richland, Mississippi Police Department, approximately four miles away, that an armed robbery had just occurred in a convenience store in Richland. At that time, Officer Eckland was sitting in his patrol car at the intersection of Highway 49 South and Highway 469 in Florence, Mississippi. Officer Eckland was informed to be on the lookout for two black males, one wearing a medium length blue coat and approximately 5'7" tall. The other black male was reported to be wearing a light blue shirt and dark pants. Approximately five minutes after receiving the call, Officer Eckland observed a silver Chevrolet Malibu Classic with two black males, traveling south on Highway 49. As they passed through the intersection where the officer was situated, Officer Eckland observed the passenger duck as if he was attempting to hide. Officer Eckland then followed the vehicle on Highway 49 South *819 and observed the vehicle weaving in the highway. At that point Officer Eckland turned on the blue lights of his police vehicle to signal the vehicle to stop. When both vehicles stopped on the side of the highway, Officer Eckland observed the defendant emerge from the driver's side of the vehicle and approach his patrol car. Officer Eckland told the defendant to stop his advances toward him and to turn around. At that point, Officer Eckland observed that the defendant fit the description of one of the black males in the reported robbery in terms of height and the blue coat.
Officer Eckland then asked the defendant to place both hands on the trunk of his car so that the officer could conduct a search.
As Officer Eckland was patting down the defendant, the officer observed the passenger attempting to stuff something under the front seat of the car. After the officer's pat search of the defendant took place, the defendant turned around facing the officer and reached across his abdomen and grabbed the butt of his pistol. Officer Eckland then struck the defendant on the side of the cheek at which time the defendant fell to the ground. Officer Eckland drew his service revolver and ordered the defendant to lie face down in a prone position on the ground. The officer then ordered the passenger, later identified to be Kenneth Ray McCarter, to emerge from the vehicle on the passenger's side. As he was ordering McCarter to exit the vehicle, defendant Murphy attempted to get off the ground. The officer again ordered the defendant to freeze and ordered McCarter to exit the vehicle. As the officer again looked up he saw McCarter emerging the vehicle with what appeared to be a rifle. He again ordered him to freeze and the defendant again attempted to get up. As Officer Eckland was securing defendant Murphy on the ground, McCarter ran approximately 30 yards in front of the vehicle down the highway and then turned right into a wooded area off the highway. Officer Eckland handcuffed the defendant and placed him in the back of his patrol car.
The officer radioed the Richland, Mississippi police department for assistance. Officer Lucas of the Richland Police Department responded to Officer Eckland's call for assistance. Officer Lucas searched the vehicle and retrieved a rifle lying on the back floorboard of the car. Officer Eckland then turned the defendant over to Officer Lucas and the Richland Police Department. A search ensued to locate defendant McCarter. At approximately 9:30 a.m. that morning, McCarter was located and arrested.
The defendant contends that the trial court erred in finding that Officer Eckland had probable cause to stop the defendant's vehicle. Specifically, the defendant contends that the officer only had information that two black males had committed an armed robbery of a nearby convenience store and a description of their clothing. Defendant points out that the officer did not have a description of the vehicle driven by the perpetrators of the robbery.
The Fourth Amendment of the United States Constitution and Art. 1, § 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. Art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). The stopping of an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).
The distinction between an arrest and a stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed reasonable suspicion of Terry v. Ohio, supra, and LSA-C.Cr.P. 215.1. Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of *820 each case by whether the officer had sufficient facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individuals detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195 (La.1983); State v. Andrishok, 434 So.2d 389 (La.1983).
In the present case, Officer Eckland had received a report of an armed robbery occurring minutes earlier in his vicinity. Officer Eckland observed two black males pass through the intersection where he was stationed and observed one of the men attempt to conceal himself. Officer Eckland followed the vehicle and observed the car weave in the highway. The totality of the circumstances of a particular case must be examined to determine whether the officer had the requisite belief justifying reasonable cause. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Belton, supra. State v. Goodson, 444 So.2d 1337 (La.App. 2d Cir.1984). Fright, nervousness, or a startled look at a police officer or other conduct of this type may be conduct of a highly suspicious nature that may be one of the factors leading to a finding of reasonable cause. State v. Belton, supra.
We find that the totality of the circumstances in the present case were sufficient to justify Officer Eckland in the reasonable belief that the two men who he had stopped may have been involved in the armed robbery.
Additionally, probable cause for the arrest of the defendant occurred once Officer Eckland observed the defendant walking toward his patrol car. Probable cause for an arrest exists when facts and circumstances known to the officer are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Hathaway, 411 So.2d 1074 (La.1982). Officer Eckland testified that as the defendant was walking toward his patrol car, he determined that the defendant fit the description of a man who had moments earlier reportedly robbed a convenience store in Richland, Mississippi. Specifically, the officer observed that the black male was wearing a medium-length blue coat and that he was approximately 5'7" tall. Therefore, based upon the information that the officer had, we find that there was probable cause for the arrest of the defendant.
Having found that both the defendant's stop and subsequent arrest were lawful, these assignments of error are without merit.

Assignment of Error No. 4
By this assignment, the defendant contends that the trial court erred by not suppressing his confession to West Monroe police officers on the basis that he was not fully advised of the reasons for his arrest or detention.
On November 3, 1980, officers from the West Monroe Police Department interviewed the defendant in the Rankin County Jail in Brandon, Mississippi. Officer Norris testified that immediately after they entered the interview room at the county jail they introduced themselves to the defendant as West Monroe policemen and told the defendant that they were in Mississippi investigating a robbery of a Stop N Go convenience store in West Monroe. Officer Norris testified that he read to the defendant a standard interrogation waiver that outlined the defendant's constitutional rights, and that the defendant indicated to him that he understood his rights as they were read to him.
In order to introduce a defendant's confession or inculpatory statement, the state must make an affirmative showing that it was made freely and voluntarily, and not influenced by fear, intimidation, threats, inducements, or promises. State v. West, 408 So.2d 1302 (La.1982); State v. Dunn, 454 So.2d 1229 (La.App. 2d Cir. 1984). If the statement was made in the course of a custodial interrogation, a prerequisite to admissibility of the statement is the advising of the accused of his constitutional *821 rights and an intelligent waiver of those rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Benoit, 440 So.2d 129 (La. 1983).
The defendant does not contest that he was in fact given his Miranda rights by the West Monroe police officers and that he waived those rights. However, the defendant contends that Louisiana Constitution Art. 1, § 13 requires that the accused "be advised fully of the reason for his arrest or detention," and defendant was not so advised. There is no basis in the record for defendant's contention. The record reflects that the officers gave the defendant his Miranda rights, that he in fact waived those rights, and that the officers told the defendant that they were investigating the West Monroe armed robbery of a convenience store. Therefore, the defendant has failed to support his argument with any substantiated facts in the record.
Additionally, the defendant was being detained by Mississippi authorities pursuant to his arrest for an armed robbery in Mississippi. The defendant was not being detained for the West Monroe robbery.
The trial court was correct in finding that the confession given by defendant was freely and voluntarily given.
This assignment of error is without merit.

Assignment of Error No. 5
By this assignment, the defendant contends that the trial court erred in denying defendant's motion to recuse the trial judge.
The defendant asserts numerous allegations as examples that the trial court did not maintain a role as an impartial trier of fact and should, therefore, have been recused. The defendant contends that the court forced him to go to trial irrespective of the lack of preparedness of court appointed counsel and recently retained counsel and that his court appointed counsel was not allowed to withdraw. Defendant contends that the court told the jury that they would be questioned "ad nauseum" as to their qualifications to serve on the jury. Defendant contends that his court appointed counsel betrayed him by informing an employee of the district attorney's office of his contemplated trial strategy. Defendant contends that the court engaged in a "sub rosa" meeting with employees of the district attorney's office outside of the presence of defense counsel in order to embark upon a course of action to overcome defendant's contemplated action. Defendant contends that the court compelled defendant to appear before the jury wearing leg irons and clothing issued by the Ouachita Parish Jail and repeatedly refused to remedy the situation. Defendant contends that the court refused to act upon defendant's motion to preserve defendant's trial clothing as part of the appellate record. The defendant contends that the cumulative impact of each of these circumstances suggest that the court confused his role as an impartial trier of fact with that of an ally of the prosecution and thus was unable to afford defendant a fair and impartial trial.
LSA-C.Cr.P. Art. 671 sets forth the grounds for recusation of a trial judge. LSA-C.Cr.P. Art. 671 states, in pertinent part, as follows:
"In a criminal case a judge of any court, trial, or appellate, shall be recused when he:
"(1) is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial; ...
"(6) would be unable, for any other reason, to conduct a fair and impartial trial."
It is well settled that a trial judge is presumed to be impartial. State v. Edwards, 420 So.2d 663 (La.1982); State v. Collins, 288 So.2d 602 (La. 1974). For an accused to be entitled to the recusation on the grounds of bias, prejudice, and personal interest, such bias, prejudice, and personal interest must be of a substantial nature based on more than mere conclusionary allegations. State v. Edwards, supra; State v. Qualls, 377 So.2d 293 (La. 1979). *822 Defendant's contentions consist largely of objections to rulings by the trial court in the conduct of the trial. The only allegation which the defendant asserts which might indicate a bias or prejudice is a meeting between an assistant district attorney and the judge outside the presence of defense counsel. At the recusal hearing, it was revealed that defendant's cocounsel, Mr. Nies, had informed the assistant district attorney that they would waive the right to a jury trial on a second count of armed robbery. The assistant district attorney then informed the trial judge of defense counsel's intentions. After being informed of defense counsel's intended action, the trial judge then prepared himself by reviewing the law prior to hearing defendant's motion.
Next, the defendant's contention that the trial court stated that the jurors would be questioned "ad nauseum" does not appear in the record. If made, there is no showing that the statement referred to defense counsel alone.
The fact that the trial judge prepared himself for defendant's motion by doing legal research does not indicate bias or prejudice. Additionally, the defendant has made no showing that the court's comment to the jury venire, if made, was anything more than a casual remark not directed at either side.
The defendant's complaints relate more to the manner in which the trial court conducted the proceedings than to the evidence of any bias or prejudice by the court. The defendant has failed to make any showing of bias or prejudice on the part of the court. The allegations which the defendant contends indicate bias or prejudice are more properly raised by a motion for mistrial or preserved for assignment of error by a contemporaneous objection. LSA-C.Cr.P. Art. 775 and 841; State v. Baldwin, 388 So.2d 679 (La.1980). Most of the objections to rulings are raised in other assignments of error which we find to be without merit.
This assignment of error is without merit.

Assignment of Error No. 6
By this assignment, the defendant contends that the trial court erred in denying defendant's motion to quash based upon the denial of the defendant's right to a speedy trial and the violation of statutory guidelines governing the limitation of prosecution in felony cases. The defendant states that the failure of the state to bring the defendant to trial within a reasonable period of time resulted in a delay in excess of three years.
The record reflects that the defendant was arrested on October 29, 1980 in the state of Mississippi pursuant to a robbery occurring in Mississippi. On November 3, 1980, West Monroe police officers interviewed the defendant pertaining to a robbery occurring on October 28, 1980 in West Monroe. On November 19, 1980, an affidavit was filed by Sergeant Norris of the West Monroe Police Department who alleged that the defendant had confessed to him his involvement in the West Monroe robbery. The defendant was subsequently convicted for armed robbery in the state of Mississippi and sentenced to serve three years. On August 2, 1983, the defendant filed a motion in Ouachita Parish demanding that he be returned for trial in the state of Louisiana. On October 31,1983, a bill of information was filed by an assistant district attorney for the Fourth Judicial District in Louisiana charging the defendant with the crime of armed robbery. Defendant's trial in the present case began on January 3, 1984.
The defendant contends that the state violated the defendant's constitutional right to a speedy trial as guaranteed by the Sixth Amendment of the United States Constitution and Art. 1, § 13 of the Louisiana Constitution of 1974. Additionally, the defendant contends that the state violated the defendant's statutory rights as provided by the Louisiana Code of Criminal Procedure.
Under LSA-C.Cr.P. Art. 61, the district attorney has entire charge and control of every criminal prosecution instituted or *823 pending in his district, and determines when, whom, and how he shall prosecute. The district attorney's discretion is limited to the extent that LSA-C.Cr.P. Art. 572 requires that due prosecution of noncapitol offenses necessarily punishable by imprisonment at hard labor must be instituted within six years from the time the offense was committed. Armed robbery under LSA-R.S. 14:64 provides for a minimum sentence of imprisonment of five years. LSA-C.Cr.P. Art. 382 provides that criminal prosecutions in the district court shall be instituted by indictment or information. Only violations of an ordinance may be instituted by an affidavit under Article 382.
Therefore, defendant's contention that the filing of an affidavit in this case on November 19, 1980 constituted the institution of prosecution against the defendant is clearly wrong. The institution of the prosecution in the present case was not begun until the bill of information was filed on October 31, 1983. The filing of the bill of information was clearly within the statutory limit of six years as provided by Article 572 and the commencement of the trial was within the two-year limitation as provided by Article 578. Therefore, the district attorney acted within his statutory authority.
The defendant additionally contends that the prosecution of the defendant violated his constitutional right to a speedy trial. The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Art. 1, § 16 of the Louisiana Constitution of 1974. The right attaches when an individual becomes an accused by formal indictment or by bill of information, or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Dewey, 408 So.2d 1255 (La.1982); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Dewey, supra. The initial inquiry is into the length of the delay and if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of the delay that will provide such an inquiry is dependent upon the peculiar circumstances of the case. State v. Dewey, supra.
The record reflects that on October 29, 1980, the defendant was arrested concerning an armed robbery occurring in Mississippi. The defendant was subsequently convicted in the state of Mississippi and was sentenced to serve three years. The defendant was set for release from the state of Mississippi on September 29, 1983 at which time he was transferred to the state of Louisiana. Therefore, for approximately three years the defendant was not being detained by the state of Louisiana but rather by the state of Mississippi. No criminal prosecution was pending in Louisiana against the defendant until October 31, 1983. The defendant was not in custody in Louisiana until September 29, 1983. The length of delay between defendant's actual restraint in the state of Louisiana and the trial on January 3, 1984 was not unduly long.
The district attorney in the present case was justified in delaying institution of the prosecution due to the fact that the defendant was serving time in Mississippi.
In considering all of the circumstances of this case, the defendant was not denied his constitutional right to a speedy trial.
Therefore, this assignment of error is without merit.

Assignment of Error No. 7
By this assignment the defendant asserts that the trial court erred in granting defendant's motion to sever the trials of the defendants. Defendant contends that he was entitled to severance on the basis that the two defendant's defenses were antagonistic.
The record reflects that shortly after defendants McCarter and Murphy were arrested, they each confessed to West Monroe *824 police officers. Each defendant confessed his own involvement in the robbery and implicated each other in the robbery. The only aspect in which the defendant's differed is that each accused the other of holding the gun during the robbery. Defendant has contended that this conflict in their confessions created antagonistic defenses.
Jointly indicted defendants are to be tried jointly unless the court is satisfied that justice requires a severance. LSA-C.Cr.P. Art. 704; State v. Webb, 424 So.2d 233 (La.1982); State v. Hodge, 457 So.2d 152 (La.App. 2d Cir.1984). An accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial court. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982). Co-defendants seeking severance must present evidence of actual antagonism. State v. Dunbar, 356 So.2d 956 (La.1978); State v. Hodge, supra. Additionally, where the ends of justice will best be served by a severance, it should be granted. State v. Webb, supra; State v. Hodge, supra.
The fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. State v. Williams, 416 So.2d 914 (La.1982).
In a similar case the Louisiana Supreme Court in State v. Simmons, 381 So.2d 803 (La.1980), stated:
"While the confessions of these defendants do purport to shift the blame for the shooting to the other, the defenses are not by reasons thereof rendered antagonistic. Both confessions involved both defendants as principals. Only the extent of participation is contradictory. The degree of blame each seeks to cast upon the other does not suffice to warrant severance."
In the present case both confessions involved the defendants as principals and they are only contradictory as to the extent of the defendant's participation. Therefore the defendant failed to make a showing of an antagonistic defenses.
This assignment of error is without merit.

Assignment of Error No. 8
By this assignment, the defendant contends that the trial court improperly admitted his co-defendant's confession in that it denied him his right to effectively confront and cross-examine a key witness against him in violation of the confrontation clause of the Sixth Amendment to the United States Constitution.
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court reversed the robbery conviction of a defendant who had been implicated in the crime by his co-defendant's confession. Because the codefendant had not taken the stand at the joint trial and thus could not be cross-examined, the court held that admission of the co-defendant's confession had deprived the defendant of his rights under the confrontation clause.
The admission of a confession of a co-defendant is not error when the defendant's own confession was also introduced into evidence and it "interlocked" or was substantially identical with the confession of his co-defendant. Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); State v. McSpaddin, 341 So.2d 868 (La.1977).
In the present case both defendants' confessions were substantially identical. The confessions only conflict as to which defendant held the gun. This fact is not substantially relevant in that each defendant would be equally guilty as principals. The defendant's confession interlocked with his co-defendant's confession thus rendering both confessions admissible.
This assignment of error is without merit.

*825 Assignment of Error No. 9

By this assignment, the defendant contends that the trial court erred in requiring the defendant to proceed to trial with appointed counsel against his wishes.
The record reflects that defendants Murphy and McCarter were appointed joint counsel. Shortly before trial, on December 29, 1983, defendant Murphy retained Paul Henry Kidd to represent him at trial. At a hearing on defendant's motion for a continuance, Mr. Kidd made a motion to the court that Mr. Nies, appointed counsel, be removed from representation of defendant Murphy. Mr. Kidd based his motion for a continuance on the fact that he had inadequate time to prepare for a trial due to the late date that he was retained. However, the court appointed counsel, Mr. Nies, indicated to the court that he was prepared to go to trial representing both defendants Murphy and McCarter. The trial court denied Mr. Kidd's motion to remove Mr. Nies from representation of defendant Murphy. The court allowed Mr. Nies to remain as co-counsel, representing defendant Murphy, with Mr. Kidd.
The defendant contends that the court erred in requiring that the defendant be jointly represented with defendant Murphy in that the defendant's defenses were in conflict. The defendant contends that separate representation would have allowed defendant to enter into plea negotiations with the state in which he could urge that he held a lesser degree of culpability. Secondly, the defendant contends that he could have elected to go to trial and contended that he had not committed the crime and that police officers had enticed him to falsely confess.
Multiple representation is not per se illegal and does not violate the Sixth Amendment to the United States Constitution or Art. 1, § 13 of the Louisiana Constitution unless it gives rise to a conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); State v. Kirkpatrick, 443 So.2d 546 (La.1983). If a defendant establishes that an actual conflict of interest adversely affected his lawyer's performance, he has demonstrated a violation of his constitutional rights.
Mere allegations that one co-defendant intends to point an accusatory finger at the other co-defendant as his defense will not be sufficient to support a case for actual conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983).
The defendant's contention that he would have had separate defense options had he been granted separate counsel is mere speculation. The possibility that another approach should be used in a trial with better results to a defendant exists in every case and is far from making out a deprivation of a constitutional right. State v. Kahey, supra.
The defendant has failed to make a showing that there existed any substantial conflict of interest in the joint representation of defendants, Murphy and McCarter, by Mr. Nies. Further, defendant was also represented by separate retained counsel, who took the lead in the defense.
Therefore, this assignment of error is without merit.

Assignment of Error No. 10
By this assignment the defendant contends that the trial court erred in denying defendant's motion for a new trial based upon prosecutorial nondisclosure of evidence. Specifically, the defendant contends that the state failed to notify defense counsel that a blue coat used in the photographic lineup was not the same coat as that introduced into evidence.
Upon request by the defense, the state has the constitutional duty to disclose evidence material to the guilt or punishment of the accused. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The record reflects that the defendant failed to file a motion for discovery and inspection. Despite this failure, defendant contends that the state had a duty to expose *826 evidence which was exculpatory. The defendant contends that the fact that the defendant was wearing a different blue coat in the photographic lineup than the one which he was purportedly wearing when he was arrested, constituted exculpatory evidence. We disagree.
The fact that the defendant was wearing two different coats on two different occasions has little or no bearing on the defendant's guilt.
This assignment of error is without merit.

Assignment of Error No. 11
By this assignment, the defendant contends that the imposition of a 20-year prison sentence constitutes an unconstitutionally excessive sentence in violation of Art. 1, § 20 of the Louisiana Constitution of 1974.
A sentence is constitutionally excessive in violation of Art. 1, § 20 of the Louisiana Constitution if the sentence is grossly out of proportion to the severity of the offense, or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
In the present case, the defendant's actions threatened serious bodily harm. Shortly after committing the armed robbery in West Monroe, the defendant and his co-defendant fled to Mississippi and committed another armed robbery. Under these circumstances the imposition of a 20year sentence is not out of proportion to the severity of the offense or a needless and purposeless imposition of pain and suffering.
This assignment of error is without merit.

Decree
Having found no merit to defendant's assignments of error, the defendant's conviction and sentence are affirmed.
Affirmed.