LOBRANO, Judge.
Defendants, Kenneth R. Smith and Albert Lewis, were indicted for the July 30, 1976 first degree murder of Maria DiGiovanni, a violation of Louisiana Revised Statute 14:30.
Defendants were arraigned on August 25, 1976 and pled not guilty. On October 13, 1976, the charge was amended to second degree murder as to each defendant. Both defendants again pled not guilty and both were tried on that date. At the conclusion of the trial, a twelve member jury found both defendants guilty as charged.
On October 20,1976, both defendants were sentenced to life imprisonment without benefit of parole, probation or suspension of sentence for forty (40) years.
Their convictions and sentences were affirmed in a per curiam opinion where only a *943 review for errors patent was requested. State v. Lewis and Smith, 413 So.2d 513 (La.1982).
On April 27, 1992 both defendants were granted an out-of-time appeal by the trial court.

FACTS:

On the morning of July 30, 1976, the body of 74 year old Maria DiGiovanni was found in the bedroom of her home at 1414 Mandeville Street. The apartment was in disarray. The bathroom window was broken and the telephone wire to the receiver was cut.
An autopsy revealed Ms. DiGiovanni was strangled, stabbed over 100 times in the face, shoulder and abdomen, received injuries to her face including black eyes and missing teeth, a broken breastbone and broken ribs, lacerations to her vagina and a head injury so severe that one of her ears was nearly severed. The head injury contained small pieces of metal which matched an aluminum wrapped brick found in the apartment. In addition, a wooden handle with a broken piece of metal on the end was found deep inside her vagina.
Vaginal samples were positive for spermatozoa. Ms. DiGiovanni had type “0” blood. Seminal fluid found on her nightgown and inside her vagina came from a type “B” blood type secretor. Kenneth Smith’s blood type is “0”. Albert Smith’s blood type is “B”.
The murder investigation revealed that Ms. DiGiovanni had recently purchased a large color television set which was missing from the apartment. After receiving a telephone call from Smith’s sister, Smith and Lewis became the prime suspects in the murder. Both were arrested and taken to police headquarters. There they both waived their rights and gave written statements admitting to the murder.

ALBERT LEWIS’ STATEMENT:

According to Lewis, he was approached by Smith early in the morning of July 30th. Smith told Lewis that he knew where they could get a new television set. Lewis, and another boy named Ernest Brown, accompanied Smith to Ms. DiGiovanni’s apartment. Lewis and Smith then entered the apartment through the bathroom window. It was approximately 4:00 a.m. Brown remained outside. Ms. DiGiovanni was asleep. Lewis and Smith began searching the apartment for money. The victim awoke, screamed and ran toward the front door. Lewis grabbed a rag and shoved it into her mouth while Smith stabbed her with an ice pick. Lewis, armed with a knife from the kitchen also began stabbing her. Smith then began stabbing her with a knife which he brought with him to kill anyone who interfered with the burglary. When the victim fell to the floor, they took her into the bedroom. They tied her legs to the bedpost. They then struck her in the head with a brick and both raped her. Smith then shoved the wooden handle of a broken knife or fork into her vagina.
They took a color television, a toaster, a fan, a small amount of money, and a bag of jewelry and left through the back door. All three men then moved the television across the street to Smith’s sister’s house and left it in the back yard. They put the toaster and fan under the house. Brown accompanied Lewis back to Lewis’ house. Smith took the jewelry to his girlfriend’s house. When Lewis got home, he burned his blood soaked clothes in the back yard. He did not burn his sandals. He and Smith later met at Smith’s girlfriend’s house to split the money. Lewis’ share was five or six dollars.

KENNETH SMITH’S STATEMENT:

Smith’s statement is very similar to Lewis’.
Smith, Lewis and Brown were standing outside Smith’s sister’s apartment when they decided to burglarize Ms. DiGiovanni’s apartment to steal money. Smith and Lewis entered the apartment-through the bathroom window. Brown remained outside as a lookout. Smith began searching the kitchen. He picked up an ice pick. Ms. DiGiovanni entered the kitchen. He and Lewis grabbed her. He placed a rag over her face and Lewis put a blanket over her face. Lewis got the ice pick. Smith grabbed a kitchen knife and they both began stabbing her. After she fell to the floor, they took her into the bedroom and both raped her. Smith tried unsuccessfully to force her to perform fellatio on him. Smith admitted he struck her in the head with a brick and that he intended to kill *944 anyone who caught him in the house. He and Lewis took a television set, a toaster, a fan and some jewelry. He left the toaster and jewelry at his girlfriend’s house.
Search warrants were subsequently executed at 1411 Mandeville Street, residence of Smith’s sister; 1674½ N. Claiborne Avenue, residence of Smith’s girlfriend and 1670 N. Claiborne, Lewis’ residence. From 1411 Mandeville, police seized a color television set, the serial number of which matched that taken from Ms. DiGiovanni’s apartment and a fan which was the same make and model as that listed on a box found in the victim’s apartment. From 1674⅜ N. Claiborne Avenue, police seized a portable radio, a toaster, a small hand accordion and some jewelry. Ms. DiGiovanni’s sister identified the accordion as one which she had given to her and which was in her apartment. From 1670 N. Claiborne Avenue, police seized a partially burned T-shirt. Smith’s fingerprints were found on the television, the radio and on a metal container found in the victim’s apartment. Lewis’ fingerprints were found on the television set, the radio, the toaster and on the medicine cabinet in the victim’s apartment.
Defendants appeal their convictions and sentences asserting the trial court erred in permitting the state to introduce into evidence the confessions of both defendants, thereby denying each defendant his rights under the confrontation clause of the Sixth Amendment of the United States Constitution. Defendants also request a review for error patent.
In support of their contention that their Sixth Amendment rights were violated, defendants cite Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
In Bruton, the United States Supreme Court reversed the robbery convictions of a defendant who had been implicated in the crime by his co-defendant’s confession. The high court held that because the co-defendant did not take the stand at the joint trial and, thus, could not be cross-examined, the admission of his confession violated the defendant’s rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.
Subsequently, however, in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), the high court found the Bruton rule inapplicable when the defendant has confessed and his confession interlocks with and corroborates the confession of his co-defendant. The court’s decision was founded in the fact that “the incriminating statements of a co-defendant will seldom, if ever, be of the ‘devastating’ character referred to in Bruton where the incriminated defendant has admitted his own guilt.” 442 U.S. at 73, 99 S.Ct. at 2139. “Successfully impeaching a co-defendant’s confession on cross-examination would likely yield small advantage to the defendant whose own admission of guilt stands before the jury unchallenged.” Id.
Thereafter, in Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the high court reiterated its holding in Parker with respect to the “interlocking” confessions of jointly tried defendants and set forth the following test to determine the sufficiency of the degree to which the statements interlock:
“If those portions of the defendant’s purportedly ‘interlocking’ statement which bear to any significant degree on the defendant’s participation in the crime are not thoroughly substantiated by the defendant’s own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the co-defendant’s confession may not be admitted.” 476 U.S. at 545, 106 S.Ct. at 2064.
In the confessions at issue herein, both Smith and Lewis each recounted the essential and material facts of the offense in a substantially identical manner. Each confession implicated the confessor and his co-defendant and contain no significant discrepancies. Thus, pursuant to both Parker and Lee, the trial court did not err by allowing the introductions of the confessions at trial *945 even though neither defendant chose to testify.[1]
A review of the record reveals no errors patent.
For the foregoing reasons, defendants’ convictions and sentences are affirmed.
AFFIRMED.

. See also, State v. Walters, 523 So.2d 811 (La. 1988); State v. Simmons, 381 So.2d 803 (La.1980), cert. den. Simmons v. Louisiana, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 498 (1980); State v. Neidlinger, 498 So.2d 189 (La.App. 1st Cir.1986); State v. Murphy, 463 So.2d 812 (La. App. 2nd Cir.1985), writ den. 468 So.2d 570 (1985).