341 So.2d 868 (1977)
STATE of Louisiana
v.
Bobbie L. McSPADDIN and Milton J. Gautreaux, Sr.
No. 58282.
Supreme Court of Louisiana.
January 24, 1977.
*869 Charles R. Chesnutt, III, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Geraldine S. Veazey, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Bobbie L. McSpaddin and Milton J. Gautreaux, Sr., were charged with armed robbery, La.Rev.Stat. 14:64, convicted and each was sentenced to hard labor for twelve years. They appeal relying on seven assignments of error.
At approximately 1:15 p.m. on October 11, 1975, Sergio Hernandez was in his store, the Hennessey Food Store, on the corner of South Hennessey and Ulloa Streets in the city of New Orleans. A man came in, walked around the store, and then confronted Hernandez with a gun partially hidden in a paper bag, demanding, "Give me the money." Hernandez complied by handing the man $350 from the cash register. As the robber left, Hernandez saw him enter the passenger side of a waiting automobile and observed the car speed off.
On the basis of a description of the car furnished by Hernandez to the police, and the tip of a confidential informer, defendants were arrested two days later. At a photographic and physical lineup Hernandez identified McSpaddin as the man who robbed him.

Assignment 1
Prior to trial defendants moved the court to "sever the indictments herein and order two separate trials, rather than one trial for both defendants." Although the trial judge ordered the district attorney to show cause on January 29, 1976 why defendants should not be given separate trials, apparently defendants did not press for a hearing, for none was held on the motion. Aside from the fact that there are no factual allegations *870 in the motion, no evidence was presented in support of the motion. However, prior to commencement of trial on February 5, 1976, the trial judge denied the motion to sever, finding that defendant would not be prejudiced by a joint trial. Whereupon defense counsel informed the court that the State had confessions for each defendant, each confession implicating the other defendant. In response the trial judge stated, "I don't know about the confessions, but if they're what you say they are and the State uses them, I will have to declare a mistrial."
Later, during the trial, the State did introduce the confessions, and defendants moved for a mistrial which was denied.
The McSpaddin confession included the following statement:
"Me and Milton Gautreaux were riding around and we were broke and we didn't have any money and we was talking and we just got it in our mind to pull an armed robbery. We went back to Milton's house at 3321 Lafite Street and we got Milton gun and snuck it out the house so the old lady couldn't see it. . . . I got out the car and walked in the store and pulled the gun and told the man give me your money . . . I put the money in my pocket and left the store, and got into the car with Milton and we went back to Milton house."
The confession of Milton Gautreaux included the following: "Me and Bobby McSpaddin were driving a white 1971 Plymouth. . . Bobby said let's pull a robbery. . . Bobby said let's go home and get the gun . . . I parked on the side of the store while Bobby McSpaddin went in with the gun."
It is the defense contention that the trial judge erred in failing to grant separate trials to defendants because the admission of their confessions, each implicating the other, denied each defendant the right of confrontation. The defense brief sets forth that there is "no substantial conflict in the fact situation as outlined in each confession;" and the record shows that neither defendant chose to take the stand.
As authority for the defense position, Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) is cited. That case stands for the proposition that where, in a joint trial, a codefendant's confession implicating a defendant is introduced and the codefendant does not take the stand and subject himself to cross-examination, defendant's right of cross-examination secured by the confrontation clause of the sixth amendment is violated. Instructions to the jury that the confession is only evidence against its author do not suffice to cure the error.
Initially it should be noted that the factual and legal basis for a motion to sever should be established prior to trial. Matters which arise at the trial which were unknown to the judge at the time of his ruling on the motion to sever cannot be relied upon as a ground for error.
At the time of his ruling on the motion to sever, the trial judge had no evidence before him to establish that the two confessions amounted to antagonistic defenses as the defense now contends. Under these circumstances, the judge did not commit error in overruling the motion for a severance. State v. Birbiglia, 149 La. 4, 30, 88 So. 533, 543 (1921). However, in view of the fact that the trial judge informed defense counsel that he would grant a mistrial if the confessions were introduced at trial and proved to present antagonist defenses, this decision will not be based solely on the lack of evidence to support the severance motion.
In the Court's view the facts of this case are distinguishable from the facts in the Bruton case, upon which the defense relies. In the confessions at bar each defendant recounted the essential and material facts of the criminal offense in substantially identical manner. Each confession implicated the confessor and his codefendant. In Bruton the codefendant who confessed implicated defendant and, by not taking the stand, gave him no opportunity to cross-examine.
*871 Because of these factual distinctions, this case more properly falls within the rule that the admission of the confession of a codefendant does not vitiate a defendant's conviction where the defendant's own confession was also introduced into evidence and it "interlocked" or was "substantially identical" with the confession of his codefendant. See United States ex rel. Oritz v. Fritz, 476 F.2d 37 (2d Cir. 1973), cert. denied, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973); State v. Stubbs, 239 So.2d 241 (Fla.1970); State v. Hopper, 253 La. 439, 218 So.2d 551 (1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 545, 24 L.Ed.2d 504 (1970).
In State v. Hopper, id., this Court held:
"Here, however, in the context of the circumstances presented, we have the codefendants' admissions standing side by side with each confessor acknowledging in his own confession the same criminal conduct ascribed to him by the other. The hearsay statements are corroborated by each codefendant's extrajudicial statement or vice versa. Under such a situation, it is wholly unnecessary to speculate whether the cautionary instructions of the judge may not have effectively prevented the jury from disassociating each confessor's inculpation of his codefendant in determining the latter's guilt. For, as we see it, the hearsay caused no injury and did not deprive either defendant of a substantial constitutional right because, if each defendant had taken the stand, it is difficult to perceive what benefit either could have gained by cross-examining the other anent the same criminal conduct to which each had already voluntarily confessed extrajudicially."
In light of the denials of certiorari in State v. Hopper and United States ex rel. Ortiz v. Fritz, supra, the confessions here, because they are interlocking or substantially identical, so minimize the risk of "prejudicial spillover" incrimination that the lack of ability to cross-examine is reduced to an insignificant level. Thus a joint trial is permissible and results in no harm. La.Code Crim.Pro. art. 921.
This assignment is without merit.

Assignment 2
A lineup with six color photographs of Caucasians was held shortly after the arrests of defendants on October 13, 1975. Two blonds and four individuals with dark hair were represented in these photographs. The photographs included one of each defendant. McSpaddin was a blond and Gautreaux had dark hair. When these photographs were presented to the victim he readily identified McSpaddin.
At a motion to suppress this identification, the victim testified that the police did not suggest whom he should select nor was he encouraged in any way to choose any particular photograph. Defendants argue that because McSpaddin was a blond and Hernandez could only choose a blond as the robber (Gautreaux having waited outside in the getaway car) McSpaddin was the only one the victim could possibly select. Hence the lineup was impermissibly suggestive. We are asked to view the photographs to determine whether a substantial possibility of misidentification occurred.
A study of the photographs discloses no striking characteristic of McSpaddin which would unduly suggest to the victim that he was the robber. Natural differences were of course apparent, but there were type similarities which support the State's position that there was no intention to create undue suggestion.
Later at a live lineup on October 21, 1975 in which McSpaddin and Gautreaux were included, the victim again identified McSpaddin as the man who held him up and robbed him. At the time of the lineup defense counsel was present. Again the defense argues that McSpaddin, who was the only one of the two defendants the victim could identify, was one of only two blonds out of seven individuals in the lineup. These two blonds were dissimilar in that McSpaddin was short and fat, while the other was tall and slim. These physical characteristics, it is argued, were unduly suggestive. A photograph of the lineup does not support the contention. Although the subjects are not identical, there is a *872 general similarity which does not unduly emphasize their differences.
Defense counsel also complains that he was not permitted to enter the viewing room where the victim was at the time he identified McSpaddin. Although the record is not clear on this contention, it suffices to say that defendants were not entitled to the presence of counsel at this pre-indictment lineup. State v. Rudolph, 332 So.2d 806 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. Nero, 319 So.2d 303 (La.1975).
Except where a confession is involved, on the trial of a motion to suppress the burden of proof is on the defendant to prove the grounds for his motion. La.Code Crim.Pro. art. 703(C). Defendant has not discharged this burden and this assignment is without merit.

Assignment 3
Against a contention that defendants were under duress and were subject to police brutality, it is contended that, by refusing to suppress the defendant's confession, the trial court erred in finding that these confessions were free and voluntary. La.Rev.Stat. 15:451-52. The burden of proof is upon the State to prove that the confessions were free and voluntary. La. Code Crim.Pro. art. 703(C). Although the State's evidence contradicts the defense evidence, the trial judge accepted the testimony of five police officers who participated in the arrest of the defendants.
The arrest was made at 2:15 p.m. Defendants were transferred to police headquarters almost immediately thereafter. At headquarters, the standard warning printed on the rights of arrestee form was read to the defendants for the second time, they having been advised of their rights immediately after the arrest. Both defendants signed the form, indicating that they understood their rights and that the signing occurred at 3:00 p.m. and 3:05 p.m.
Officers who subsequently recorded and transcribed the statements made by defendants testified that they did not beat defendants and no beatings were inflicted upon them in their presence, or otherwise, to the best of their knowledge. Two days after his arrest McSpaddin was examined by a physician in the parish prison. The doctor found no evidence of physical abuse, although he did find pre-existing ailments which may have accounted for the discomfort defendant complained of.
On the other hand, several witnesses testified for the defense. They were for the most part relatives or close friends. Their testimony dealt chiefly with matters which occurred at the time of the arrest and almost a month thereafter, matters entirely unrelated in time to the taking of the confessions.
As always in factual determinations of this nature where the evidence is contradictory, the credibility question falls especially within the discretion of the trial judge. His factual determinations are entitled to great weight and will not be disturbed on review unless clearly contrary to the evidence. State v. White, 329 So.2d 738 (La.1976); State v. Alexander, 328 So.2d 144 (La.1976); State v. Stewart, 325 So.2d 819 (La.1976); State v. White, 321 So.2d 491 (La.1975).
This assignment is without merit.

Assignment 4
While this assignment of error appears as number 6 in the record, it is designated as number 4 in defense brief. Other like renumbering occurs in the defense brief. Accordingly, designations used in defense brief are adopted in this opinion.
At the hearing on the motion to suppress the confessions, the defense attempted to qualify Dr. Richard Strobock as an expert in the field of psychiatry. The purpose of his testimony was to bring out defendant McSpaddin's mental condition one month after the arrest. By this testimony the defense expected to demonstrate the effect on McSpaddin of long term and repeated harassment by the police.
By questioning Dr. Strobock, it was ascertained that he had been admitted to the *873 practice of medicine in Louisiana but had not completed his residency requirement in psychiatry. He was then in training at Charity Hospital.
He needed another year of residency to become board qualified, after which he would become eligible to take the examination prescribed by the American Board of Psychiatrists and Neurologists. When this examination was successfully completed, he would become fully eligible as a psychiatrist.
For these reasons, the trial judge explained in his per curiam, the doctor was not allowed to testify as an expert in the field of psychiatry, but he was allowed to testify as an expert in the field of general medicine. Thereafter the doctor did testify as an expert in this field, and he did state that McSpaddin had an intense suicidal desire because of fear of police brutality.
Aside from the tenuous relevancy of this testimony to the voluntary nature of the confession obtained almost a month before, the doctor testified that McSpaddin had an intense suicidal tendency which he attributed to police mistreatment. It was the effect of the alleged mistreatment which defendants sought to establish by the doctor's expert testimony. La.Rev.Stat. 15:467.
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court." La.Rev. Stat. 15:466.
While Dr. Strobock's qualifications as a resident and instructor in psychiatry at Tulane University Medical School are impressive, because of the circumstances outlined above no error is presented which would warrant reversal. La.Code Crim.Pro. art. 921. Cf. La.Rev.Stat. 37:1284; State v. Williams, 309 So.2d 303 (La.1975).

Assignment 5
The defense called Anita Spell as a witness to testify to the circumstances surrounding the arrests of defendants. She testified that Gautreaux was her boy friend and stayed at her apartment. On Cross-examination the prosecutor asked her these questions:
"Q. Did you spend the night with Mr. Gautreaux?
A. He stayed there.
Q. Do you know Mr. Gautreaux's married to someone else?
A. Yes, I knew.
Q. Was Mrs. Gautreaux there at the apartment that night?"
At this time defense counsel objected, stating that the line of questioning was irrelevant. The trial judge sustained the objection, and denied the prosecutor the right to argue the point. Then, at the request of defense counsel, the trial judge instructed the jury to disregard argument of counsel, as only evidence from the witness was competent.
The defense argues that the trial judge erred in failing to prevent unduly prejudicial testimony from this witness.
When the purpose is to show that in the special case on trial the witness is biased, as the State contends in brief, it is competent to question her as to any particular fact showing or tending to show bias. La.Rev.Stat. 15:492.
In this instance, the testimony elicited from the witness did no more than indicate that an intimate relationship existed between the witness Spell and the defendant Gautreaux. By establishing this fact, the State was attempting to show bias on the part of the witness in that she had a particular interest in giving, and a tendency to give, testimony favorable to the defendant. The testimony was therefore admissible under Section 492.
This assignment has no merit.

Assignment 6
In brief for the first time the defense assigns as error the fact that the trial judge erred in failing to permit the defense to impeach its own witness. This assignment *874 is not contained in the record with the other assignments of error. Accordingly, the trial judge has not had an opportunity to prepare a per curiam, and the prosecutor has not answered the assignment in its brief.
Article 844 of the Code of Criminal Procedure requires that "[t]he party appealing shall designate, in writing, those errors which are to be urged on appeal," and to file them within the time specified by the trial judge. This enables the judge to submit a per curiam if he desires to do so, and the prosecution and this Court are thereby informed of the issues on appeal.
In the case at bar, because of this belated assignment of error, no opinion will be written on this assignment. A study of the argument and the record shows it is without merit.

Assignment 7
Defendants filed a motion for a new trial in which it is alleged that a new witness was available to testify to the involuntary character of the confessions obtained from defendants; the witness was not available at the time of the hearing on the motion to suppress the confession despite due diligence on the part of the defense; and this witness' favorable testimony was and would likely lead to a different conclusion on the motion to suppress.
Defense counsel pointed out at the hearing on this motion that the newly discovered witness did not testify at the motion to suppress the confessions. His testimony was favorable to the defendants showing police mistreatment in obtaining the confession. The trial judge denied the new trial, saying that he heard the testimony of the witness at the trial, and if the same testimony had been presented in connection with the motion to suppress it would not have changed the result.
Although defense counsel objected to this ruling, he did not assign the ruling as error. For this reason, although the trial judge filed a per curiam to all errors which were properly assigned, he was unable to file a per curiam to this defense contention urged as error for the first time in brief on this appeal. La.Code Crim.Pro. art. 844. For errors to be included in the assignment of errors reviewable on appeal, the requisite procedures must have been followed. Code Crim.Pro. art. 844; See Comment (b), La. Code Crim.Pro. art. 920.
There is no merit in this contention.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs.
CALOGERO, J., dissents.