469 So.2d 277 (1985)
STATE of Louisiana, Appellee,
v.
Kenneth McCARTER, Appellant.
No. 16615-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Rehearing Denied June 7, 1985.
*279 Daryl Blue, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James Allan Norris, Dist. Atty., Earl Cox, Asst. Dist. Atty., Monroe, for appellee.
Before HALL, MARVIN and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
The defendant, Kenneth McCarter, was convicted of armed robbery in violation of LSA-R.S. 14:64 and was sentenced to twenty years at hard labor without benefit of parole, probation or suspension of sentence. He appeals his conviction and sentence relying on six assignments of error. We affirm.

Facts
On the morning of October 28, 1980 two black males robbed a West Monroe convenience store and one of its customers. One of the robbers was armed with a Marlin .22 caliber rifle. The following morning defendant and a companion, Donald Ray Murphy, were arrested in Mississippi in connection with an armed robbery committed in that state. Evidence found in the automobile in which defendant and Murphy were riding in Mississippi at the time they were stopped in connection with the Mississippi robbery implicated them in the West Monroe robbery.
On November 3, 1980 West Monroe police officers, Larry Norris and Pat Kelley, interviewed defendant and Murphy in the Rankin County, Mississippi jail. Both suspects confessed to the West Monroe robbery; however, each stated the other was the gunman.
Based on the confessions the State of Louisiana placed detainers on defendant and Murphy. The two were subsequently *280 convicted for the Mississippi robbery and sentenced to terms of imprisonment in that state. On October 19, 1982, while still in prison in Mississippi, defendant filed a motion in Ouachita Parish demanding that he be promptly returned to Louisiana for trial. The State of Louisiana took no action on this motion.
Upon his release from the Mississippi prison on October 30, 1983 defendant was delivered to Ouachita Parish authorities. A bill of information was filed October 31, 1983 charging defendant and Murphy, who was released from prison September 29, 1983, with two counts of armed robbery arising from the West Monroe incident. The two were tried together in a trial beginning January 3, 1984 and both were convicted of one count of armed robbery.[1] Murphy's conviction has been affirmed by this court. State v. Murphy, 463 So.2d 812 (La.App. 2d Cir.1985). Many of the issues raised by defendant's appeal are identical to those raised in Murphy's appeal.

Assignment No. 1
By this assignment defendant contends the trial court erred in refusing to order the removal of shackles from his legs during trial.
The record reflects defendant and Murphy were required to wear leg shackles throughout their trial. During the second day of voir dire one of the defense attorneys questioned two prospective jurors concerning their opinions about the shackles. They testified they had not noticed the shackles and stated the wearing of the shackles by the defendants did not create in their minds a presumption of the defendants' guilt. After the second juror was questioned about the leg irons the trial judge called a bench conference. The judge subsequently admonished the entire venire that the use of the restraints was a security procedure employed by law enforcement officials and should not be considered as evidence of the defendants' guilt. The judge also stated that he had not noticed the shackles until the point was brought up by counsel.
The defendants subsequently moved for a mistrial or in the alternative that the shackles be removed during the remainder of the trial. A hearing on the motion was held out of the jury's presence. At the hearing Captain Tillman Brown of the Ouachita Parish Sheriff's Office testified the sheriff had ordered leg restraints be kept on all prisoners during trial, due to a number of recent escapes from the courtroom, unless the trial judge ordered their removal. Based on this testimony the trial judge denied the motion for a mistrial and refused to order the shackles removed.
An accused may insist that he be brought into court with the appearance, dignity and self-respect of a free and innocent man. State v. Kinchen, 290 So.2d 860 (La.1974); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983). He should not be brought before the court shackled, handcuffed or garbed in any manner destructive of the presumption of innocence and of the dignity and impartiality of the judicial proceedings. State v. Wilkerson, 403 So.2d 652 (La.1981); State v. Broadway, supra. However, exceptional circumstances may require, within the discretion of the trial court, the restraint of the prisoner for reasons of courtroom security or order or where the prisoner's past conduct reasonably justifies apprehension that he might escape. State v. Wilkerson, supra; State v. Daniel, 297 So.2d 417 (La.1974); State ex rel. Miller v. Henderson, 329 So.2d 707 (La.1976).
If the restraints are objected to at the time of trial, for a finding of reversible error the record must show an abuse of the trial court's reasonable discretion resulting in clear prejudice to the accused. State v. Wilkerson, supra; State ex rel. Miller v. Henderson, supra; State v. Colvin, 452 So.2d 1214 (La.App. 2d Cir.1984).
*281 In regard to Murphy's allegation that the trial court erred in refusing to order the removal of the shackles, we stated:
We believe the trial court erred in refusing defense counsel's request for removal of the leg restraints during the remainder of the trial, absent a showing of exceptional circumstances or a particular need for this security measure during the trial of this defendant. However, considering the relatively unobtrusive nature of the restraints, the failure of defense counsel to object to their presence until the second day of the trial after they had been observed by the jurors, the clear and complete admonition given to the jury by the trial judge, and the substantial evidence of the guilt of the defendant, including the confessions of the defendant and his codefendant, we find the error to have been without substantial prejudice to the defendant, harmless, and insufficient to warrant reversal of the conviction.
We adhere to the views expressed in State v. Murphy, supra, in the instant case.[2] This assignment of error is without merit.

Assignment No. 2
By this assignment defendant contends the trial court erred in finding that the Mississippi officer who stopped the car in which he and Murphy were riding, had probable cause to stop the car and arrest them. For this reason defendant contends much of the evidence against him was inadmissible as the "fruit of the poisonous tree."
Murphy urged an identical assignment of error. In disposing of Murphy's assignment we summarized the facts giving rise to the complaint, Murphy's arguments, the applicable law and our conclusions as follows:
At approximately 3:45 a.m. on October 29, 1980, Greg Eckland, a Florence, Mississippi police officer, received a radio call from the Richland, Mississippi Police Department, approximately four miles away, that an armed robbery had just occurred in a convenience store in Richland. At that time, Officer Eckland was sitting in his patrol car at the intersection of Highway 49 South and Highway 469 in Florence, Mississippi. Officer Eckland was informed to be on the lookout for two black males, one wearing a medium length blue coat and approximately 5'7" tall. The other black male was reported to be wearing a light blue shirt and dark pants. Approximately five minutes after receiving the call, Officer Eckland observed a silver Chevrolet Malibu Classic with two black males, traveling south on Highway 49. As they passed through the intersection where the officer was situated, Officer Eckland observed the passenger duck as if he was attempting to hide. Officer Eckland then followed the vehicle on Highway 49 South and observed the vehicle weaving in the highway. At that point Officer Eckland turned on the blue lights of his police vehicle to signal the vehicle to stop. When both vehicles stopped on the side of the highway, Officer Eckland observed the defendant emerge from the driver's side of the vehicle and approach his patrol car. Officer Eckland told the defendant to stop his advances toward him and to turn around. At that point, Officer Eckland observed that the defendant fit the description of one of the black males in the reported robbery in terms of height and the blue coat.
Officer Eckland then asked the defendant to place both hands on the trunk of his car so that the officer could conduct a search.
As Officer Eckland was patting down the defendant, the officer observed the passenger attempting to stuff something under the front seat of the car. After *282 the officer's pat search of the defendant took place, the defendant turned around facing the officer and reached across his abdomen and grabbed the butt of his pistol. Officer Eckland then struck the defendant on the side of the cheek at which time the defendant fell to the ground. Officer Eckland drew his service revolver and ordered the defendant to lie face down in a prone position on the ground. The officer then ordered the passenger, later identified to be Kenneth Ray McCarter, to emerge from the vehicle on the passenger's side. As he was ordering McCarter to exit the vehicle, defendant Murphy attempted to get off the ground. The officer again ordered the defendant to freeze and ordered McCarter to exit the vehicle. As the officer again looked up he saw McCarter emerging the vehicle with what appeared to be a rifle. He again ordered him to freeze and the defendant again attempted to get up. As Officer Eckland was securing defendant Murphy on the ground, McCarter ran approximately 30 yards in front of the vehicle down the highway and then turned right into a wooded area off the highway. Officer Eckland handcuffed the defendant and placed him in the back of his patrol car.
The officer radioed the Richland, Mississippi police department for assistance. Officer Lucas of the Richland Police Department responded to Officer Eckland's call for assistance. Officer Lucas searched the vehicle and retrieved a rifle lying on the back floorboard of the car. Officer Eckland then turned the defendant over to Officer Lucas and the Richland Police Department. A search ensued to locate defendant McCarter. At approximately 9:30 a.m. that morning, McCarter was located and arrested.
The defendant contends that the trial court erred in finding that Officer Eckland had probable cause to stop the defendant's vehicle. Specifically, the defendant contends that the officer only had information that two black males had committed an armed robbery of a nearby convenience store and a description of their clothing. Defendant points out that the officer did not have a description of the vehicle driven by the perpetrators of the robbery.
The Fourth Amendment of the United States Constitution and Art. 1, § 5 of the Louisiana Constitution protects people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as by both state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983). The stopping of an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).
The distinction between an arrest and a stop is crucial in many cases, for an arrest can be made only on probable cause, while a stop is proper under the more relaxed reasonable suspicion of Terry v. Ohio, supra, and LSA-C.Cr.P. 215.1. Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individuals detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Belton, 441 So.2d 1195 (La.1983); State v. Andrishok, 434 So.2d 389 (La.1983).
In the present case, Officer Eckland had received a report of an armed robbery occurring minutes earlier in his vicinity. Officer Eckland observed two black males pass through the intersection where he was stationed and observed one of the men attempt to conceal *283 himself. Officer Eckland followed the vehicle and observed the car weave in the highway. The totality of the circumstances of a particular case must be examined to determine whether the officer had the requisite belief justifying reasonable cause. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Belton, supra. State v. Goodson, 444 So.2d 1337 (La.App. 2d Cir. 1984). Fright, nervousness, or a startled look at a police officer or other conduct of this type may be conduct of a highly suspicious nature that may be one of the factors leading to a finding of reasonable cause. State v. Belton, supra.
We find that the totality of the circumstances in the present case were sufficient to justify Officer Eckland in the reasonable belief that the two men who he had stopped may have been involved in the armed robbery.
Additionally, probable cause for the arrest of the defendant occurred once Officer Eckland observed the defendant walking toward his patrol car. Probable cause for an arrest exists when facts and circumstances known to the officer are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Hathaway, 411 So.2d 1074 (La.1982). Officer Eckland testified that as the defendant was walking toward his patrol car, he determined that the defendant fit the description of a man who had moments earlier reportedly robbed a convenience store in Richland, Mississippi. Specifically, the officer observed that the black male was wearing a medium-length blue coat and that he was approximately 5'7" tall. Therefore, based upon the information that the officer had, we find that there was probable cause for the arrest of the defendant.
We adhere to the views expressed in State v. Murphy, supra. An additional factor supporting the trial court's finding of probable cause for this defendant's arrest is the fact that he fled from the scene.
This assignment of error lacks merit.

Assignment No. 3
By this assignment defendant contends the trial court erred in not granting a motion to sever his and Murphy's trials. Defendant argues he was entitled to the severance on the basis that his and Murphy's defenses were antagonistic because each of their confessions implicated the other in the robbery. Defendant also argues the admission of Murphy's confession effectively prevented him from exercising his right to confront and cross-examine a key witness against him.
In respect to Murphy's demand for severance based upon his contention of antagonistic defenses, we stated:
... Each defendant confessed his own involvement in the robbery and implicated each other in the robbery. The only aspect in which the defendant's differed is that each accused the other of holding the gun during the robbery. Defendant has contended that this conflict in their confessions created antagonistic defenses.
Jointly indicted defendants are to be tried jointly unless the court is satisfied that justice requires a severance. LSA-C.Cr.P. art. 704; State v. Webb, 424 So.2d 233 (La.1982); State v. Hodge, 457 So.2d 152 (La.App. 2d Cir.1984). An accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial court. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, 412 So.2d 1007 (La.1982). Co-defendants seeking severance must present evidence of actual antagonism. State v. Dunbar, 356 So.2d 956 (La.1978); State v. Hodge, supra. Additionally, where the ends of justice will best be served by a severance, it should be granted. State v. Webb, supra; State v. Hodge, supra.
The fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. State v. Williams, 416 So.2d 914 (La.1982).
*284 In a similar case the Louisiana Supreme Court in State v. Simmons, 381 So.2d 803 (La.1980), stated:
"While the confessions of these defendants do purport to shift the blame for the shooting to the other, the defenses are not by reasons thereof rendered antagonistic. Both confessions involved both defendants as principals. Only the extent of participation is contradictory. The degree of blame each seeks to cast upon the other does not suffice to warrant severance."
In the present case both confessions involved the defendants as principals and they are only contradictory as to the extent of the defendant's participation. Therefore the defendant failed to make a showing of an antagonistic defense.
In respect to Murphy's claim that the admission of his co-defendant's confession denied him the right to confront and cross-examine a witness against him, we stated:
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court reversed the robbery conviction of a defendant who had been implicated in the crime by his co-defendant's confession. Because the co-defendant had not taken the stand at the joint trial and thus could not be cross-examined, the court held that admission of the co-defendant's confession had deprived the defendant of his rights under the confrontation clause.
The admission of a confession of a co-defendant is not error when the defendant's own confession was also introduced into evidence and it "interlocked" or was substantially identical with the confession of his co-defendant. Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); State v. McSpaddin, 341 So.2d 868 (La.1977).
In the present case both defendants' confessions were substantially identical. The confessions only conflict as to which defendant held the gun. This fact is not substantially relevant in that each defendant would be equally guilty as principals. The defendant's confession interlocked with his co-defendant's confession thus rendering both confessions admissible.
We again adhere to the views expressed in State v. Murphy, supra. This assignment of error lacks merit.

Assignment No. 4
By this assignment defendant contends the trial court erred in denying his motion to quash based upon the denial of his right to a speedy trial.
In State v. Murphy, supra, we summarized the law relative to whether the accused's right to a speedy trial has been violated as follows:
... The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by Art. 1, § 16 of the Louisiana Constitution of 1974. The right attaches when an individual becomes an accused by formal indictment or by bill of information, or by arrest and actual restraint. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Dewey, 408 So.2d 1255 (La.1982); State v. Perkins, 374 So.2d 1234 (La.1979). Four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Dewey, supra. The initial inquiry is into the length of the delay and if the delay is presumptively prejudicial, there will be an inquiry into the other factors. The length of the delay that will provide such an inquiry is dependent upon the peculiar circumstances of the case. State v. Dewey, supra.
In Murphy we held that the defendant's right to a speedy trial was not violated because there was no undue delay between the time the State of Louisiana obtained custody of the defendant and trial. We also found the state was justified in delaying the institution of the prosecution while Murphy was in the Mississippi prison.
*285 In the instant case the defendant contends that once he filed his demand to be returned to Louisiana for trial on October 19, 1982 the state had a constitutional duty to attempt to secure him for trial and that duty was breached. See Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We agree that by not taking any action on defendant's demand to be returned to Louisiana for trial the state breached its duty.[3] However, a determination of whether the breach of that duty constitutes a violation of defendant's right to a speedy trial must be made in light of the four Barker v. Wingo, supra, factors. Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973).
The initial factor to be considered is the length of the delay. Under Smith v. Hooey, Dickey v. Florida and Moore v. Arizona the critical delay is the period between the time the accused first asserted his right to a speedy trial and the trial. In Smith v. Hooey and Dickey v. Florida the defendants were tried approximately six years after their initial demands for a speedy trial and the delays were held to be violations of the defendants' rights to speedy trials. In Moore v. Arizona the delay was 28 months and had been found by the state courts to have not been prejudicial to defendant and therefore did not violate his right to a speedy trial. The case was remanded for a determination of whether the delay, along with the other factors set forth in Barker, did in fact violate defendant's right to a speedy trial. The delay in Barker v. Wingo was 21 months. This delay, when evaluated by the factors therein enunciated, was found not to violate the defendant's right to a speedy trial. Here the delay was approximately 14½ months. While the delay was substantial it was considerably less than that involved in the cited U.S. Supreme Court decisions. This delay alone does not mandate the conclusion that this defendant has been denied his right to a speedy trial but rather it must be evaluated along with the other Barker v. Wingo factors and the determination of this issue shall be made from the totality of the circumstances.
The second factor to be considered is the reason for the delay. The reason for the delay, here and in the cited U.S. Supreme Court cases, is that the defendant was incarcerated in another jurisdiction. These cases hold that the mere fact the accused is incarcerated in another jurisdiction is no excuse for the authorities in the jurisdiction where charges are pending not to attempt to secure his presence for trial. This is especially true where the law provides means for obtaining the accused for trial. Smith v. Hooey, supra; Dickey v. Florida, supra.[4] Defendant has pointed to no authority, and we know of none, binding on the State of Mississippi by which Louisiana could have demanded and secured his presence for trial. We note that neither state has adopted the Interstate Agreement on Detainers Act, 18 USC App. §§ 1-8. Louisiana should have made an earlier attempt to secure the defendant from Mississippi for trial but its failure to make the effort does not require the conclusion defendant was denied a speedy trial but rather it is only one of the circumstances to consider in connection with the determination.
*286 The final factor we consider is whether the delay resulted in prejudice to defendant.[5] The record reveals that the delay resulted in no prejudice to defendant at trial. Defendant does not claim the delay inhibited his preparation of a defense. To the contrary he did not attempt to call any witnesses, and does not claim the delay rendered any witnesses unavailable, and did not otherwise attempt to present a defense. The delay in holding the trial could only have served to diminish the memory of the state's witnesses, which could have been an advantage to the defendant. Several of the state's witnesses stated that because of the delay between the robbery and the trial they were unable to remember critical facts which the prosecutor attempted to elicit from them.
The only possible prejudice to which defendant points is that the delay resulted in the trial court's being unable to order his sentence to run concurrently with the one he was serving in Mississippi. The record tends to indicate that even if defendant had been promptly returned for trial the trial judge would not have ordered defendant's sentence to run concurrent with any sentence he was currently serving.[6] The trial judge specifically ordered the defendant's sentence to be served consecutive to any sentence he was then serving.
After giving due weight to each of these factors we conclude that, while the state breached its duty to attempt to obtain defendant for trial, the breach of that duty did not deny the defendant his right to a speedy trial and is not reversible error. We have reached this conclusion because the 14½ month delay was not grossly excessive and the total absence of any substantial prejudice is well established by the record.
This assignment of error lacks merit.

Assignment No. 5
By this assignment defendant contends the trial judge failed to comply with LSA-C.Cr.P. art. 894.1 guidelines and that his sentence is excessive.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir. 1983); State v. Square, 433 So.2d 104 (La. 1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La. App. 2d Cir.1983).
The defendant was exposed to a maximum sentence of 99 years at hard labor without benefit of parole, probation or suspension of sentence. The court complied with LSA-C.Cr.P. art. 894.1 guidelines and carefully individualized the sentence to this defendant. We find no manifest abuse of discretion in a twenty year sentence for a defendant who committed two armed robberies within a short period of time. Since the robberies were separate and distinct acts we find no error in the trial court's refusal to give defendant credit for time served in Mississippi.
This assignment of error lacks merit.

Assignment No. 6
By this assignment defendant contends the prosecutor made an impermissible reference to another crime in violation of State v. Prieur, 277 So.2d 126 (La.1973).
*287 While questioning one of the officers who participated in defendant's arrest in Mississippi the prosecutor asked him about the "incident" in Mississippi. The record does not support defendant's claim that the jury could have construed this remark as a reference to the Mississippi robbery. No mention of that robbery was made to the jury; however, evidence was presented to them on the facts surrounding the stopping of the car, defendant's flight and his subsequent arrest. The jury could only have construed the prosecutor's remark as a reference to one of those incidents.
This assignment of error lacks merit.
Defendant's conviction and sentence are AFFIRMED.
NOTES
[1] After hearing the evidence the trial judge ordered the count charging defendant and Murphy with robbing the customer dismissed.
[2] We also note there is evidence in the record that McCarter escaped at the time the initial attempt to detain him was made in Mississippi (see our discussion of Assignment # 2) and for this reason there was more justification for the use of leg irons on him than there was for the use of leg irons on Murphy.
[3] Louisiana waited until McCarter had served his Mississippi prison term in October, 1983 at which time he was released by Mississippi authorities to Ouachita Parish officers pursuant to a Louisiana detainer which had been placed upon McCarter while he was in the Mississippi prison.
[4] Smith and Dickey involve situations where the defendants were facing state charges while imprisoned in federal facilities. In both cases the Supreme Court points out that federal law provides means by which a state can obtain a federal prisoner for trial. See also State v. Jones, 285 So.2d 231 (La.1973). In Moore v. Arizona the defendant was imprisoned in another state. There the Supreme Court, in remanding the case for reconsideration in light of the Barker v. Wingo factors, did not mention whether there was means available for obtaining the defendant's presence for trial.
[5] There is no question that defendant's demand to be returned to Louisiana for trial constituted an assertion of his right to a speedy trial.
[6] The decision of whether to order a sentence to run concurrently with a sentence imposed by another state is within the trial court's discretion. LSA-C.Cr.P. art. 883.1; State v. Duncan, 396 So.2d 297 (La.1981).