**Danny Dean YOST, Appellant,**

v.

**Stephen SMITH, Warden, Luther Luckett Correctional Complex, Appellee.**

No. 91–SC–561–DG.

Supreme Court of Kentucky.

May 27, 1993.

Rehearing Denied Sept. 2, 1993.

C. McGehee Isaacs, Wilson, Nelson & Isaacs, Covington, for appellant.

Suzanne D. Cordery, Dept. of Corrections, Office of Gen. Counsel, Frankfort, for appellee.

REYNOLDS, Justice.

Appellant, Danny Dean Yost, is currently incarcerated and in the custody of the Kentucky Corrections Cabinet. He is serving a sentence of twelve years (which commenced March 4, 1988) for the offenses of burglary first degree and theft over $100, as directed by a judgment of conviction of Carlisle Circuit Court.

Appellant's presentence investigation report reflects several criminal charges pending in other states, including Alabama, Arkansas, Mississippi, Tennessee, Texas and Louisiana. At the request of a Kentucky Corrections Cabinet official, Louisiana prosecuting officials completed and returned an informational request form advising that charges pending against appellant were in effect and a detainer was to be filed.

On November 17, 1988, Kentucky prison officials received an arrest warrant issued by the Fourth Judicial Circuit of the Parish of Moorhouse, Louisiana, and it was lodged as a detainer for the appellant.

On January 9, 1989, the state of Louisiana filed a request for temporary custody of appellant under Article IV of the Interstate Agreement on Detainers (IAD). Pursuant to Louisiana's request under the IAD, appellant was taken before the Boyle District Court for a pretransfer hearing pursuant to KRS 440.-250 and in accordance with *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). Appellant refused to waive further transfer proceedings and further hearings were scheduled.

After a continuance of the Commonwealth's motion, Boyle District Court denied transfer and dismissed the transfer proceedings. The Commonwealth advised the court that the State of Louisiana had failed to submit a response to its request for information. Subsequently, the Commonwealth moved to reinstate the proceeding because additional information was received from Louisiana and this motion was denied on the grounds that the materials supplied by the

State of Louisiana were insufficient to establish the identity of the defendant.

No additional or corrected pleadings were filed and the Commonwealth did not appeal the ruling of the district court. Irrespective of the court's ruling, Yost was transported by Louisiana officials from the Kentucky institution of his incarceration to Louisiana on May 25, 1989. Following an inquiry from appellant's counsel requesting the authority for such transfer, appellant was returned to Kentucky without further disposition of the Louisiana criminal charges.

Appellant's writ of habeas corpus (filed pursuant to 28 U.S.C. § 2254) was denied in the United States District Court and such order was affirmed upon appeal by the United States Court of Appeals for the Sixth Circuit. Thereafter, the appellant filed a petition for a writ of habeas corpus in the Oldham Circuit Court. Oldham Circuit Court denied the petition for a writ of habeas corpus and the Kentucky Court of Appeals affirmed. Appellant's motion for discretionary review was granted by this Court.

■ The appellee maintains that appellant should be barred from seeking this relief because he abandoned his previous appellate rights in *Danny Dean Yost v. Dewey Sowders,* (89–CA–1973), and then unsuccessfully turned to the federal courts before pursuing this application in Oldham Circuit Court. Appellee objects to successive applications for a writ of habeas corpus. The United States Supreme Court addressed this issue and stated, "We note initially the principles of *res judicata* are inapplicable to successive habeas corpus proceedings." *Smith v. Yeager,* 393 U.S. 122 at 124, 89 S.Ct. 277 at 279, 21 L.Ed.2d 246 (1968). We find no merit to appellee's objection.

■ Appellant states that the Interstate Agreement on Detainers does not apply to this situation and from our review we find it is undisputed that the State of Louisiana is not a signatory to the Interstate Agreement on Detainers. *See Louisiana v. McCarter,* 469 So.2d 277 (1985). Without equivocation IAD is applicable only as between signatory states. *United States v. Dixon,* 592 F.2d 329 at 333 (6th Cir.1979) states:

Congress enacted the Interstate Agreement on Detainers Act in 1970, joining the United States and the District of Columbia as parties to the Interstate Agreement on Detainers (Agreement), to which 46 states are signatories. The Agreement attempts to remedy the disadvantages and hardships imposed upon prisons attendant with the use of detainers and to eliminate potential abuses of the detainer system. Accordingly, the Agreement encourages the expeditious disposition of outstanding charges by providing the prisoner with a method of clearing detainers and charges outstanding against him. It further provides cooperative proceedings governing temporary transfers of prisoners for purposes of trial on outstanding charges among the participating jurisdictions to aid disposition. In either case, the provisions of the Agreement are applicable only when a participating jurisdiction, having untried charges pending against a prisoner, first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated.

As the transfer from Kentucky to Louisiana was not in compliance with proper procedure (neither the Interstate Agreement on Detainers nor the Uniform Criminal Extradition Act), Kentucky has forfeited its right to require appellant to serve out the remainder of his twelve year sentence.

*Jones v. Rayborn,* Ky., 346 S.W.2d 743 (1961), states a controlling principle of law to be followed. In *Jones* the defendant was sentenced to life imprisonment by the Jefferson Circuit Court in 1946. In 1947 he was tried in the United States District Court and received a federal sentence of thirty years, which was later reduced to twenty years. The United States District Court ordered that the federal sentence be served concurrently with the state sentence. Upon expiration of the service of the state sentence, the prisoner was to be turned over to the federal authorities in order to complete the federal sentence.

In 1952, due to a riot at the Eddyville Penitentiary, Rayborn was transferred to a federal penitentiary. At the time of his surrender to federal officers, defendant had

served five years, nine months and twenty-one days in state prison. A prisoner serving a life term was then eligible for parole after serving eight years. KRS 439.110. In October of 1959 Rayborn became eligible for parole on his federal sentence. In response to the Attorney General's opinion, which set forth that Rayborn had to serve a minimum of eight years in a penal institution in this state in order to be eligible for parole, the circuit court granted a petition for a writ of habeas corpus on the grounds that the transfer of Rayborn to federal authorities in September of 1952 resulted in a waiver of the jurisdiction of the Commonwealth.

In effect, *Jones v. Rayborn* provides that where the inmate was transferred to one prison beyond the jurisdiction of this state against his will and without lawful authority, the transferring state thereby relinquishes jurisdiction to subject him to further punishment. *Id.,* 346 S.W.2d at 745, citing *People ex rel. Barrett v. Bartley,* 383 Ill. 437, 50 N.E.2d 517 (1943). In concluding the court in *Jones v. Rayborn* found that:

> We believe this case might well be decided entirely upon the poetic but rarely applied Section 2 of the Constitution of the Commonwealth of Kentucky where it is written:
> "Absolute and arbitrary power over the lives, liberty and property of free men exists nowhere in the republic, not even in the largest majority." *Jones,* 346 S.W.2d at 748.

Additional Kentucky authority, which was rendered after *Jones,* reinforces appellant's contention that the state forfeits its jurisdiction when local authorities release a prisoner to another state without following proper administrative or statutory procedures. *Shull v. Wingo,* Ky., 446 S.W.2d 645 at 646 (1969), *see also Crady v. Cranfall,* Ky., 371 S.W.2d 640 (1963). In *Balsley v. Commonwealth,* Ky., 428 S.W.2d 614 at 615 (1968), the court found, "[Balsley's] transfer of custody to federal authorities effected a forfeiture of this state's right to enforce completion of the sentence under which it was holding him at the time of the transfer." The Balsley court referred to the similar cases of *Davis v. Harris,* Ky., 355 S.W.2d 147 (1962) and

*Thomas v. Schumaker,* Ky., 360 S.W.2d 215 (1962) in labeling such a transfer without statutory authority as constituting "arbitrary treatment barring further enforcement of the sentence under which the prisoner was being held at the time of the transfer." *Balsley,* 428 S.W.2d at 615–616. The principle is again referenced in *Commonwealth v. Hayes,* Ky., 734 S.W.2d 467, at 470 (1987).

When considered against the historical background it is evident that Section 2 of the Kentucky Constitution implies the same protection as the equal protection clause of the Fourteenth Amendment, and the exercise of an absolute and clearly arbitrary power over the appellant is a valid reason for discharge under a habeas corpus writ.

Section 2 of the Kentucky Constitution (along with Sections 1, 3 and 59) expresses the guarantee of procedural fairness and equal protection. Thus, it is both justifiable and understandable to utilize Section 2 of the Kentucky Constitution because of the lack of a more suitable provision to serve this purpose.

There is no substantive distinction between cases following the principle of law set forth in *Jones v. Rayborn* from the case at bar. The Corrections Department's transfer of Yost with disregard to elemental procedures and in disobedience to the court's order was in direct violation of Section 2 of the Constitution of the Commonwealth of Kentucky. Such capricious and dilatory tactics were unreasonable and completely failed to follow a statutory or judicial scheme.

Therefore, we hold the transfer of appellant Yost, without proper statutory authority, operated as a forfeiture of the Commonwealth of Kentucky's right to enforce the completion of the sentence under which it was holding him at the time of transfer.

From the progression of errors it is hard to conceive where a person's rights under the law were treated more cavalierly than this one. All of this comity between the local Kentucky officials and the Louisiana authorities was practiced without benefit of any statutory authority from this state; practiced without the prisoner's consent and over his protest; and practiced in utter disregard of

an order of a Kentucky court. Appellee maintains misdirected conduct of the Kentucky Corrections officials is explained as being error without harm. We simply disagree.

The evil in this and the *Rayborn* case is not so much as what was done, but that it was done without authority. Human liberty, as well as the restricted liberty of a prisoner, is always a serious matter. If he is to be shuttled about pillar to post from one jurisdiction to another, it remains important that the process be carried out under the safeguards of the well pronounced and known ground rules.

In addition to the IAD rule there exists only one other legitimate means by which Yost could have been transferred. That is KRS 440.330. It provides:

> Extradition may be granted person accused or convicted in this state—Conditions.—The governor may in his discretion surrender upon demand of the executive authority of another state, any person found in this state, notwithstanding the fact that a criminal prosecution or charges under the laws of this state are pending against such person, or that such person has been convicted in this state and is serving a sentence in any penal institution of this state. The governor may condition the release of such prisoner to the demanding state upon such terms as he may stipulate, including the condition that the prisoner be returned to this state immediately after trial and before commencing the service of sentence, if any, in the demanding state; Provided, however, in no case shall surrender of such prisoner be construed as a complete relinquishment of jurisdiction by this state, but such prisoner shall forthwith be returned to the custody of this state at expense of the demanding state, immediately after trial in the demanding state, or the completion of sentence therein, as the case may be.

Since Louisiana was not a signatory to IAD, this latter statute is the sole method by which Louisiana could have obtained custody of the appellant from Kentucky. Even a liberal construction of this latter statute, which was not employed by the parties, implies no policy in favor of entrusting grave discretionary authority to either local enforcement authorities or to correctional officials. *See Davis v. Harris*, Ky., 355 S.W.2d 147 (1962).

We direct that appellant Yost's petition for habeas corpus be granted. The Oldham Circuit Court ruling of February 26, 1991, entered in Civil Action No. 90-CI-577, and the Court of Appeals order affirming are reversed. The action is remanded to the Oldham Circuit Court with directions to grant the petition for writ of habeas corpus.

STEPHENS, C.J., and LEIBSON and COMBS, JJ., concur.

SPAIN, J., dissents by separate opinion, in which LAMBERT and WINTERSHEIMER, JJ., join.

SPAIN, Justice, dissenting.

With all due respect, I dissent from the decision of the Majority reversing the Court of Appeals and the Oldham Circuit Court and ordering the discharge of the appellant, Yost, from custody.

Numerous Kentucky cases are cited in support of the proposition that "... the state forfeits its jurisdiction when local authorities release a prisoner to another state without following proper administrative or statutory procedures." The seminal case in this line of cases was *Jones v. Rayborn*, Ky., 346 S.W.2d 743 (1961). A close examination of that decision, however, reveals a situation quite unlike that involving the appellant, Yost.

As reflected in the Majority Opinion's recitation of facts, before prisoner Rayborn was released to federal authorities for imprisonment outside Kentucky, our Attorney General's office issued an opinion that the state sentence would run concurrently with the federal sentence during the time Rayborn was in a federal institution. Notwithstanding this advice, upon his parole by federal authorities in October 1959, our Attorney General's office rendered an inconsistent opinion that Rayborn would now be required to serve an additional two years and two months in Kentucky, even though he would

have been eligible for parole in November 1954 had he remained in Kentucky.

It was against this background of arbitrary and capricious conduct by the Kentucky authorities that the trial court and our Court ordered Rayborn discharged from custody. We specifically said:

By use of a detainer he (Rayborn) was restrained after he had served time which would have made him eligible for parole under Kentucky law.

*Id.* at 748.

In contrast, in the instant case of prisoner Yost, he has not served even one additional day in custody by reason of his erroneous transfer by the Kentucky authorities temporarily to the State of Louisiana. K.R.S. 440.-451, Article V(6).

Moreover, the *Rayborn* case and virtually all of its progeny deal with extradition of fugitives from justice requiring action by governors of states, which action was usurped by lesser officials. The action involving Yost, however, did not deal with the Uniform Criminal Extradition Act, K.R.S. 440.150–440.420, but rather with the Interstate Agreement on Detainers (IAD), K.R.S. 440.450–440.510. The latter act does not require action by the Governor; the warden of an institution can and must release a prisoner to the authorities of another state when required by the agreement on detainers. K.R.S. 440.500.

Here Yost was released by the institution in good faith reliance upon the IAD standard Form V Request for Temporary Custody which was apparently properly executed by the requisite Louisiana authorities (a District Attorney and a District Judge), and appeared regular and correct on its face. Unfortunately, and doubtless embarrassingly for the officials of both states, Louisiana had not become a signatory to the IAD. Upon discovery of this mistake by the Kentucky authorities, Louisiana was notified and returned Yost promptly, without even trying him in that jurisdiction.

If *Rayborn* and the later cases direct discharge of the prisoners involved therein as a constructive forfeiture, comparable to a sanction, then I would urge application of a sort of "good faith exception" here, much as we have done recently in *Crayton v. Commonwealth,* Ky., 846 S.W.2d 684 (1993), following *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), with regard to evidence seized as a result of a defective search warrant. There is simply no legitimate reason to reward prisoner Yost for an honest mistake under the IAD which has been of no real harm to him.

LAMBERT and WINTERSHEIMER, JJ., join this dissent.