**Robert SCHNEIDER, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 1997–CA–002687–MR.

Court of Appeals of Kentucky.

Dec. 23, 1999.

Discretionary Review Denied by Supreme Court June 7, 2000.

Elizabeth Shaw, Richmond, KY, for appellant.

Albert B. Chandler, III, Attorney General, Brian Judy, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, GARDNER, and JOHNSON, Judges.

## OPINION

JOHNSON, Judge:

Robert Schneider has appealed his conviction for escape in the second degree (Kentucky Revised Statutes 520.020) and for being a persistent felony offender in the first degree (KRS 532.080). Following a jury trial, Schneider was sentenced to prison for a term of ten years. In this appeal, Schneider argues that his prosecution should have been dismissed due to the Commonwealth's failure to try him within the 180–day time limit set forth in the Interstate Agreement on Detainers Act (IAD) (KRS 440.450) We disagree and affirm Schneider's conviction.

On November 14, 1996, Schneider escaped from a holding cell in the Kenton County Building where he was being held in anticipation of a parole revocation hearing. A warrant for his arrest was issued the next day. Schneider fled to the state of Ohio where he was arrested a few days later on charges arising from events unrelated to his escape from custody in Kentucky. On March 11, 1997, Schneider wrote to Donald Buring, the Kenton County Commonwealth's Attorney, and the Clerk of the Kenton Circuit Court, and requested "a fast & speedy trial," on the escape charge. He specifically referenced the IAD in his letters. Schneider received no response from either Kentucky official.

On July 1, 1997, the warden of the institution where Schneider was then incarcerated, forwarded to the appropriate officials, the IAD forms which contained Schneider's request for a final disposition of the Kentucky escape charge, as well as information with respect to Schneider's status as an inmate in the Ohio prison system. The forms contained Schneider's notation that "[a] written request of all above was sent to the prosecutor's office and clerk of court on 3–11–97."

On August 25, 1997, Schneider was arraigned in the Kenton Circuit Court. A trial date of September 23, 1997 was set without objection. On September 10, 1997, Schneider moved to dismiss the indictment and argued that more than 180 days had elapsed since he had initially mailed his request to the appropriate Kentucky officials for a speedy trial under the

IAD. The Commonwealth insisted that the time limits contained in the IAD were not triggered by Schneider's March mailings. It argued that an inmate's direct communication affects the statute's speedy trial provision only under exceptional circumstances not alleged to have occurred in Schneider's motion, and that the 180–day period for trying Schneider did not begin to run until July 1997, when the warden gave notice of Schneider's desire to make an IAD request.

An evidentiary hearing on the motion to dismiss was conducted by the trial court on September 19, 1997. Schneider testified that he had notified prison officials in January 1997, of his desire to demand a speedy trial under the IAD. He stated that he was informed by his "case worker" that until a detainer was lodged against him, an IAD request could not be initiated on his behalf. Thus, Schneider testified that because his custodian was unable to make the request for him, he wrote directly to the Commonwealth's Attorney and the Clerk of the Circuit Court in an effort to obtain a speedy resolution of the charges he knew were pending in Kentucky.

In its order denying Schneider's motion to dismiss, the trial court concluded that Schneider had not commenced the 180–day period by his March 11, 1997 letter writing campaign because

> [u]nder Article III [of the IAD], a prisoner cannot directly notify the jurisdiction where charges are pending against him in order to have those charges disposed of. Rather, he must make this request through the warden of the institution where he is incarcerated. *See, Ellis v. Commonwealth,* 828 S.W.2d 360 (Ky.1992); K.R.S. 440.450, Article III(1) and (2).
>
> . . .
>
> Further, [Schneider] has failed to demonstrate that his attempt to invoke the time limitation was thwarted by public officials. *See, Rhodes v. Commonwealth,* Ky.App., 622 S.W.2d 677 (1981).

After this ruling, Schneider was tried under the indictment and convicted. A final judgment sentencing Schneider to prison was entered on October 10, 1997. This appeal followed.

We must determine whether the trial court correctly interpreted and applied Article III of the IAD in concluding that Schneider's direct communications to the appropriate Kentucky officials were insufficient to commence the running of the 180–day period within which he could be tried. The speedy trial provisions contained in Article III of the IAD are activated by a defendant as follows:

> (1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(2) The written notice and request for final disposition referred to in paragraph (1) hereof shall be given or sent by the prisoner to the warden, secretary of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by certified mail, return receipt requested.

The legal effect of a prisoner's failure to follow the statutory procedure and attempt to communicate directly with the receiving state [1] has already been addressed by our appellate courts. In 1981, this Court determined that a motion to dismiss an indictment "was properly overruled," where the prisoner sent a request for a speedy trial directly to state officials, and where there was no corroborating evidence that the inmate made an oral request of his custodian to send the appropriate forms, or that the custodian refused to process his request.[2] More recently, our Supreme Court held that a direct request, not accompanied "by a certificate from the appropriate official having custody of the prisoner detailing specific information about the prison term in the sending state" [3] was not "adequate to engage the time limitations of K.R.S. 440.450." [4]

■ Schneider correctly states that both the *Rhodes* and *Ellis* cases hold that under certain circumstances a direct request will suffice to activate a prisoner's rights under the IAD. Indeed, *Rhodes* states

that strict compliance with the UAD [IAD] may not be required in a proper factual setting if it appears that a pris-

oner has taken diligent and reasonable efforts to invoke the time requirements, but is prevented from full compliance because of the failure of public officials.... It is one thing for an official having custody to refuse to process a request and thus leave the prisoner to communicate as best he can with the State which has lodged a detainer for him.... It is quite a different matter, however, when a prisoner simply ignores the official having custody of him and attempts to communicate directly with the requesting State.[5]

Likewise, in *Ellis*, the Court recognized that "strict compliance with the I.A.D. may not always be required where a prisoner has diligently attempted to invoke the time limitation but is thwarted by public officials." [6]

Accordingly, Schneider insists that the trial court erred in failing to conclude that his March 1997 communications were the result of his "thwarted" attempt to follow the statutory procedure. Specifically, he contends that his direct request should be sufficient to trigger the 180–day time limit because "officials in Ohio, through no fault of their own, prevented [him] from complying with the Interstate Detainers Agreement, because of the failure of [the] Commonwealth to properly place a detainer on him." Schneider complains that the Commonwealth "failed to observe the rules" by "failing to issue a detainer."

■ Schneider's arguments in this regard evince a misunderstanding of the purposes of the IAD and the remedies it affords. The IAD was enacted "to remedy the disadvantages and hardships imposed upon prison[er]s attendant with the use of

**1.** "Receiving state" is defined in Article II of the IAD as "the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof."

**2.** *Rhodes v. Commonwealth, supra,* 622 S.W.2d at 678.

**3.** "Sending state" is the "state in which a prisoner is incarcerated at the time that he initiates a request for final disposition" under the IAD.

**4.** *Ellis v. Commonwealth, supra,* 828 S.W.2d at 360, 361.

**5.** *Rhodes, supra,* 622 S.W.2d at 678 (citing *Pittman v. State,* Del.Supr., 301 A.2d 509 (1973)).

**6.** *Ellis, supra,* 828 S.W.2d at 361.

detainers and to eliminate potential abuses of the detainer system."[7] However, the method of clearing detainers provided by the IAD is not applicable until a state "first lodges a detainer with the participating jurisdiction where the prisoner is incarcerated."[8] The IAD does not, as Schneider would have this Court hold, require Kentucky's prosecuting authorities to file a detainer against a prisoner in the first instance:

> The purpose of the statute is not to ensure the speedy disposition of every charge, or even of those charges which potentially could form the basis for a detainer being lodged. Its purpose is to provide for the speedy disposition *only of such charges as have actually resulted in a detainer being lodged* (emphasis original)[9].

■ Thus, as there is no dispute that Kentucky officials had not yet lodged a detainer against Schneider with Ohio authorities when he directly communicated his demand for a speedy trial, we hold that the trial court did not err in concluding that Schneider did not activate the 180-day limit in the IAD in March 1997.[10] Simply, since Schneider had not acquired any right to proceed under the IAD at the time he made the demand, he obviously could not have been "thwarted" by any public officials in the pursuit of that right.

Accordingly, the judgment of the Kenton Circuit Court is affirmed.

All concur.

---

**7.** *Yost v. Smith,* Ky., 862 S.W.2d 852, 853 (1993).

**8.** *Id. See also Rushin v. Commonwealth,* Ky. App., 931 S.W.2d 456, 459 (1996).

**9.** *Rushin, supra,* (citing *Huddleston v. Jennings,* Ky.App., 723 S.W.2d 381 (1986)). Although *Huddleston* concerned KRS 500.110, the Court in *Rushin* held that "[g]iven the similarity of KRS 440.450 and KRS 500.110,

the *Huddleston* reasoning would apply equally to KRS 440.450."

**10.** While the record does not reveal exactly when the detainer was actually lodged against Schneider, it is apparent that that event took place sometime after his March, 1997 letter to the Kenton County Commonwealth's Attorney, and before the warden's official request of July 1, 1997.